MATTHEW WALSH, Landlord, Plaintiff, *v.* THE FORT SCHUYLER BREWING Co. et al., Defendants.

(County Court, Oneida County, January, 1914.)

Lease — with privilege of renewal — landlord and tenant — vacation of premises at end of term — summary proceedings.

> A lease with "first privilege of renewal" means that the tenant has such privilege provided the landlord gives a lease; and the mere service of a notice on the landlord by the tenant, prior to the expiration of the term, of his election to remain and demanding a new lease does not *ipso facto* renew the lease.
>
> Where by a five years' lease the tenant was given the first privilege of renewal, but prior to the expiration of the term the landlord gave notice to the tenant and subtenants that he would not renew the lease and that they must vacate the premises at the end of the term, and the tenant also served the landlord with a notice that it thereby exercised its privilege of renewal and demanded a new lease, the landlord in summary proceedings for holding over after the expiration of the term is entitled to a final order directing the removal of defendants from the premises.

SUMMARY PROCEEDINGS brought by Matthew Walsh against the Fort Schuyler Brewing Company and its sub-tenants.

On January 9, 1909, Walsh gave the Fort Schuyler Brewing Company a lease of a hotel property in the city of Utica, which lease was to run for a term of five years, and which term expired, therefore, on the 9th of January, 1914. The lease contained the provision: "With the first privilege of a renewal of this lease at the end of said term."

Prior to the 9th of January, 1914, Walsh gave notice to the brewing company and its sub-tenants that their lease would expire on that date, and that he would not renew the same, and that they must vacate at the

end of the present term.  Prior to the expiration of the term the brewing company served upon Walsh a notice to the effect that it " does hereby exercise the privilege of renewing a certain lease " (referring to the lease in question), and requires " that a lease of said premises be given by you to the Fort Schuyler Brewing Company under and pursuant to the privilege of renewal of said lease given and contained in said lease."   And on or about the same time the Fort Schuyler Brewing Company tendered to Walsh a lease duly executed by it, of the same premises, at the same rent and for the same term as the prior lease, but not containing the covenant of renewal.  This lease Walsh refused to execute, and after the expiration of the term of the lease brought these proceedings upon the ground that the defendants were holding over after the expiration of their term without the consent of the landlord. On the 16th day of December, 1913, and prior to the expiration of the lease the landlord, Walsh, brought an action in the Supreme Court against Thomas J. Walsh, the under-tenant of the brewing company, occupying said hotel, and against the local special deputy commissioner of excise, and against William W. Farley, as state commissioner of excise, in which action, on said day, he obtained an injunction order, in and by which the said Walsh, the sub-tenant, " is enjoined and restrained from transferring said liquor tax certificate to any other premises or to any other person, and from abandoning the traffic in liquors at the said premises, Nos. 1 and 3 Oneida St., Utica, N. Y., and from filing a notice of abandonment in the traffic of liquors against the said premises until a further order of this court."

The premises at 1 and 3 Oneida street are the same premises mentioned in the lease, and for the recovery of which this proceeding is brought.

County Court, Oneida County, January, 1914. [Vol. 83.

Upon the trial the facts were stipulated. All of the above documents were marked in evidence and the case submitted to the county judge for decision.

James Coupe, for plaintiff.

Arthur J. Foley, for defendants.

HAZARD, J. There can be no question but that the original term of this lease ended on the 9th day of January, 1914, at noon. The lease by its terms specifically so provides. The entire question litigated here is as to the effect of the provision in the lease which says: "With the privilege of a renewal of this lease at the end of said term." There is nothing further than the language just quoted upon that subject in the lease. It does not state for what period, or at what rate, or in what manner the renewal is to be effected, and the petitioner claims the paragraph quoted is void for uncertainty. It seems to have been held in a number of cases that such language is to be interpreted as referring to a new lease for the same term and at the same rent. *Rutgers* v. *Hunter*, 6 Johns. Ch. 218; *Tracy* v. *Albany Exchange Co.*, 7 N. Y. 474. It is doubtless true that the clause in question was put into the lease for a purpose, and that we must endeavor to ascertain what that purpose was, and to give it effect if possible. Defendants contend that the paragraph in effect makes the lease one for ten years, or at least that it gives them the unqualified option to renew the lease for five years, and they contend that the service of their notice of election to remain or renew the lease is sufficient, *ipso facto*, to effect that result. This theory involves several propositions, the first of which is that the legal purport of the words in question is to give to the tenant an unqualified right of renewal, and that proposition

involves the other one, that the landlord has nothing to say about it, and nothing to do about it; in other words, that no new lease or agreement need be made, and that nothing whatever need be done except to serve notice on the part of the tenant, upon the landlord. There doubtless are cases in which it is provided by the terms of the lease that upon doing some specific thing, usually serving a notice in writing within a specified time, the lease shall thereby and thereupon be deemed renewed or extended; and it is doubtless true that in such cases nothing further is required than to serve a notice. Cases of that sort are: *Kolasky* v. *Michels,* 120 N. Y. 635; *Hauser* v. *Dahlman,* 72 Hun, 607, and *Hoff* v. *Royal Metal Furniture Co.,* 117 App. Div. 884. In those and many other cases which might be cited it is held that no new lease is necessary, and that nothing is necessary beyond the service of a notice on the part of the tenant, but the opinion shows clearly enough that it is so held because of the fact that the lease itself so provides, viz, that the service of such notice shall *ipso facto* renew the lease. The lease in the case at bar is absolutely silent upon the subject of how it may be renewed. The distinction between leases granting the lessee the privilege of renewal and vesting in him alone the right to renew, and one not containing such a provision, is pointed out in *Simon* v. *Schmitt,* 137 App. Div. 625. However, there is in the lease we are considering a " privilege of renewal," and it is, I think, to be construed as a privilege running to the lessee. The lease is silent as to how he may avail himself of the privilege, and it is contended that, by the service of their notice expressing a desire or intention to renew, they have thereby renewed the lease. They also contend that by the mere fact of holding over they have exercised their option, and that the lease is thereby renewed, and cite the case of *Voege* v.

*Ronalds,* 83 Hun, 114, in support of their contention.
That was an action brought to recover rent. It appears
that the lease gave to the tenant an absolute right of
renewal for a term of two years " if party of the sec-
ond part so desires." It was held in that case that the
fact of holding over after the expiration of the original
term was proof of the election on the part of the tenant
to take the additional term, and the tenant was held
liable for the rent. That is not a parallel case to the
one at bar, and, furthermore, in the case at bar the
holding over is without the consent of the landlord, he
having prior to the expiration of the term notified the
tenant that he must vacate, and that he would not re-
new. The case is also to be differentiated from that
of *Chretien* v. *Doney,* 1 N. Y. 419, cited by defendants,
which was a case where the lease provided that the
tenant has " the privilege to have the premises for
one year and one month and 20 days longer; but if he
leaves he is to give four months' notice before the ex-
piration of this lease." It was held in that case that
no new writing was contemplated between the parties,
and that by simply neglecting to serve the four months'
notice the tenants had the right to continue in posses-
sion for the full or extended term. The mere statement
of the facts, as outlined above, shows that it has no
application here. The case of *Tracy* v. *Albany Ex-
change Co.,* 7 N. Y. 472, is cited by defendants. In
that case the lease contained this clause: " The said
party of the second part to have the refusal of the
premises at the expiration of this lease for three years
longer." This was held to be a covenant to renew for
the same term and at the same rent. In that case the
landlord refused to renew except at an increased rent.
The tenant took a new lease at the advanced rent, under
protest, however, and brought that action to recover
for damages for breach of covenant to rent, and was

permitted to recover in the action. That case, however, while it might be important in an action between these parties for breach of contract to renew, is not of assistance in these summary proceedings.

My attention is not called to any case, when under circumstances exactly similar to these the tenant has been held to have effected a renewal of a lease merely upon the service of a notice. This brings us to a consideration of the petitioner's rights, if any, viz: as to whether he has anything to say on the subject of a renewal. It will be noticed that somebody, doubtless the party of the second part, is given the '' first privilege of renewal.'' Defendants contend that the word '' first '' is mere surplusage, and point out that nobody can have a renewal of the lease but themselves. This is strictly true, as a new lease, at least one to anybody else, would not be a '' renewal '' of the present or former lease. However I think that the word '' renewal,'' as contained in the paragraph in question, is meant to refer to a new or additional lease. Substantially similar language has been construed in the case of *Holloway* v. *Schmidt*, 33 Misc. Rep. 747, as follows: '' The words ' first privilege of a renewal,' as used in the lease, meant the prior right to a lease of five years upon terms the same as those in the lease of 1895, *provided the landlord should give a lease.*'' It seems to me that that decision is a satisfactory and sound one, and should be followed here, which would mean that the interpretation of the clause we are considering in the lease in the case at bar means that the tenants shall have the first privilege of renewal of this lease at the end of their original term, provided the landlord leased the premises to any one. If this decision is correct, it would follow that something more was necessary than the mere service of a demand or notice of their decision to renew upon the landlord. I think there

must have been under the circumstances in this case some new agreement, acquiesced in by both parties. I do not intend to decide that an entirely new lease must have been made. It would have been sufficient had the old lease been indorsed with a memorandum that it was renewed for a specified term at a specified rent, or even indorsed " renewed," providing that memorandum had been signed by both parties, but I think that something of that nature was required by the circumstances of this case. I do not think that the service of the notice by the tenant, notifying the landlord that he desired to remain and demanding a new lease, *ipso facto* renewed the lease. The landlord had previously, or at least before the expiration of the old term, unequivocally notified the tenant that he must vacate. It is not necessary here and now to decide whether that was a breach of contract between the petitioner and the defendants. That question is not here. Specific performance is not asked in this proceeding, and could not be given. *Simon* v. *Schmitt*, 137 App. Div. 625. Whatever may have been the rights of these defendants, or any of them, under the lease in question, I think the fact remains that the lease was not renewed, and it follows that the relation of landlord and tenant terminated at noon on the eighth day of January of this year, and as that is the contention of the petitioner herein it would seem to follow that the petition must prevail.

It is claimed, however, by the defendants that because of the restraining order, outlined above, the defendant is enjoined from leaving the premises, and that if this court should grant an order requiring him to vacate it will be in contravention of the terms of the restraining order granted by the Supreme Court. There is no merit in that contention. Obviously, it is intended on the part of the landlord to prevent the

tenant from abandoning the traffic in liquors on the premises in question, which it is apprehended he is about to do or contemplates doing, pursuant to chapter 494, Laws of 1910. The object of the plaintiff in that action is doubtless to prevent the tenants from depriving the property of its liquor tax license, and that action does not in any way interfere with these proceedings.

The petitioner is, therefore, entitled to a warrant directing the removal of the defendants from the premises in question.

Ordered accordingly.