ASAHEL WHEELER COMPANY, Respondent, *v.* IRA MENDLESON and Others, Doing Business under the Firm Name and Style of A. MENDLESON'S SONS, Appellants.

Third Department, November 14, 1917.

Sale — contract by plaintiff to buy " their supply " of products from defendants — breach of contract — failure of defendants to comply with order to deliver unprecedented amount of products — evidence — executory contract of sale indefinite as to quantity, construed — bad faith of purchaser.

In an action to recover damages for breach of a contract between the plaintiff and the defendants, by which the latter agreed to sell and the former agreed to buy " their supply " of caustic soda and lye of different kinds, it appeared that the contract was to run from January 1, 1915, to January 1, 1916; that 2,000 pounds of the soda bought by plaintiff in August, 1914, was sufficient for a period of over fifteen months; that the plaintiff gave the defendants no orders under the contract in question until November 30, 1915, at which time it had 2,000 pounds of the 1914 purchase on hand, and the price had more than doubled, and that at this time the plaintiff demanded 50,000 pounds, and upon the defendants' refusal to make shipment brought this action. It also appeared that there had been dealings between the parties for twenty years.

*Held,* that there being no evidence that the demand for the large amount of the products during the final month of the contract was necessary to supply the legitimate demands of plaintiff's trade, the judgment in its favor should be reversed and a new trial granted.

Where an executory contract is indefinite as to the quantity of goods to be furnished, the obligation of good faith and fair dealing between the parties is implied, and one party has no right to use the contract for a purpose not within the contemplation of both, as for speculative, as distinguished from regular and ordinary business purposes.

APPEAL by the defendants, Ira Mendleson and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 31st day of March, 1917, upon the decision of the court after a trial at the Albany Special Term.

*Bertram M. Aufsesser* [*Michael D. Reilly* of counsel], for the appellants.

*Visscher, Whalen & Austin* [*J. Harris Loucks* of counsel], for the respondent.

LYON, J.:

This is an action to recover damages for breach of a contract entered into between the parties hereto of date November 1, 1914, by which the defendants agreed to sell and the plaintiff agreed to buy " *their supply* of Caustic Soda packed in barrels, 76 per cent test at $2.30 per cwt. * * * Challenge Lye, 2 doz. case * * * Hudson Lye, 2 doz. case. * * * Quantity not to exceed 25 tons delivered. Prices guaranteed from any decline on our part. * * * Time of delivery during 1915. * * * Terms. Payable at 30 days from date of invoice * * *."

Concededly, the term of the running of the contract was from January 1, 1915, to January 1, 1916. The plaintiff gave the defendants no orders for any of these products until November 30, 1915, at which time the price of caustic soda had advanced from the contract price of $46 per ton to $110 per ton, and the advance in price of the other products amounted to $15. By letter of date November 30, 1915, and by letters during December, the plaintiff directed shipment to it of 24 tons, 250 pounds of caustic soda and 1,750

pounds of lye. The defendants refused to make the shipment, and early in 1916 this action was brought. The trial resulted in a decision in favor of the plaintiff for the difference in the prices of the products at the date of the contract and of the demand, that is, for $1,559.

It is the defendants' contention that the contract of November 1, 1914, is invalid by reason of want of mutuality. To the extent of " their supply " it was certainly mutual and valid, as the defendants agreed to sell and the plaintiff agreed to buy such supply during the year 1915. The important question in the case, therefore, is as to the construction which should be given the words " their supply."

The plaintiff was engaged in a general paint, drug and chemical business, and the defendants in a general wholesale and retail paint and drug business. There had been dealings between them for twenty years. By reason thereof the defendants must have been informed in a general way of the probable demands of plaintiff's trade and the methods of its doing business,- and in the absence of other evidence the parties may be presumed to have contracted with that in mind. The nature and extent of these dealings were, therefore, doubtless important as bearing upon the construction to be given to the words " their supply." Such dealings were not shown excepting as to the year 1914. In August of that year the plaintiff bought of the defendants eight barrels of caustic soda, thirty-five cases of Challenge lye, and ten cases of Hudson lye, aggregating approximately 5,080 pounds. During the first eleven months of the year 1915 the plaintiff ordered none of the contracted products of the defendants. In December, 1915, the plaintiff still had on hand 2,000 pounds, or four of the eight barrels, of caustic soda which it had bought of the defendants more than a year before, and as the plaintiff had bought no lye of the defendants up to that time in 1915 and was bound by the contract of November 1, 1914, to buy of the defendants all those brands of lye necessary to supply its trade, it may be presumed that up to November 30, 1915, the plaintiff had in stock sufficient of the lye purchased of defendants in August, 1914, to supply its trade. Unquestionably the contract should be given a reasonable construction. This would allow the plaintiff to call for

shipments of sufficient of the products to fill its orders and to keep in stock a reasonable supply for its trade. However, as to an executory contract which is indefinite as to the quantity of goods to be furnished, the obligation of good faith and fair dealing towards each other is implied, and a party to a contract has no right to use it for a purpose not within the contemplation of the parties, as for speculative, as distinguished from regular and ordinary business purposes. (*New York Central Iron Works Co.* v. *United States Radiator Co.*, 174 N. Y. 331; *Moore* v. *American Molasses Co.*, 179 App. Div. 505.)

It was the manifest intention of the parties to limit the operation of the contract as to both parties to the plaintiff's supply. There is nothing whatever in the evidence tending to show that the demand for the whole 50,000 pounds of products during the final month of the year the contract was to be in force was necessary to supply the legitimate demands of plaintiff's trade. I think the plaintiff was in good faith required to make such proof if such fact existed, and in the absence of any evidence upon the subject the inference is under the circumstances practically irresistible that the demand made by the plaintiff upon the defendants was for the purpose of speculation, and was born of the extraordinary increase in the value of caustic soda. Instead of definite evidence as to the delivery of the products being required to supply the needs of plaintiff's business, there is only the testimony of plaintiff's vice-president that at various times the plaintiff had demand for such goods from its customers, but when and in what quantities does not appear. The fact that 2,000 pounds of the defendants' caustic soda bought by plaintiff in August, 1914, was sufficient to supply plaintiff's trade until November 30, 1915, a period of over fifteen months, while the remaining 2,000 pounds of the 1914 purchase on hand December 4, 1915, was insufficient to supply the plaintiff's trade until January first, but 50,000 pounds additional of product was demanded during the remaining period of less than one month, would seem to call for some explanation in order to bring the plaintiff's demands of November and December, 1915, within the contemplation of the parties at the time they entered into the contract. We do not say

that the production of such evidence as to the requirements of plaintiff's business would entitle the plaintiff to a recovery, but we call attention to the fact as one of the reasons why the judgment should be reversed.   Unfortunately, the record is bare of much evidence which is necessary to enable a court to properly decide the rights of the parties, and hence a new trial should be had to the end that each party may furnish such additional proofs as counsel may advise.

All concurred.

Judgment reversed and new trial granted, with costs to abide the event.