SAMUEL W. TRAYLOR, Appellant, *v.* CRUCIBLE STEEL COM-
PANY OF AMERICA, Respondent.

First Department, July 2, 1920.

Contracts — exemption from liability for failure to perform caused
by strikes, fires, act of God or other causes beyond reasonable con-
trol — failure to perform due to inefficiency and delay in securing
materials —parol evidence — principal and agent — contract for
commissions on orders secured and accepted — right of agent to
commissions on orders accepted but canceled on failure of prin-
cipal to fill.

A provision in a contract exempting a party from liability for non-perform-
ance if failure to perform was caused by " strikes or fires or act of God or
other causes beyond their reasonable control " does not relieve from
liability for failure to perform where the failure was due to inefficiency
in management and lack of knowledge of methods of manufacture or to
difficulty or d lay in securing material.

The phrase " or other causes beyond their reasonable control," follow-
ing the specification of " strikes or fires or act of God," refers to some
extraordinary cause and not to those problems which must naturally be
anticipated as to performance.

There is no ambiguity in the contract which makes competent parol
evidence.

Under the contract between the parties whereby the defendant was to pay
the plaintiff a stated commission on the gross amount of contracts for war
materials secured by the plaintiff which the defendant accepted, and which
provided that the contracts should be submitted for acceptance and after
acceptance " we shall assume all responsibilities and obligations in con-
nection therewith," and which provided that the commissions should be
paid " as and when payments are made to us," the plaintiff was entitled
to commissions on the gross amounts of all contracts secured by him and
accepted by the defendant though the persons ordering the materials
canceled the contracts on the failure of the defendant to perform
them.

CLARKE, P. J., dissents.

APPEAL by the plaintiff, Samuel W. Traylor, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of New York on the —— day
of ———————— , upon the verdict of a jury, and also from
an order entered in said clerk's office on the —— day of ———,
denying a motion for a new trial.

*Owen J. Roberts* of counsel [*Dennis & Buhler*, attorneys], for the appellant.

*Frederic R. Coudert* of counsel [*Howard Thayer Kingsbury* with him on the brief; *Coudert Brothers*, attorneys], for the respondent.

SMITH, J.:

The plaintiff was in 1915 a manufacturer of heavy machinery at Allentown, Penn., and had an office in the city of New York. He had manufactured some small shells for the British government. In February of that year he made a contract with defendant for specified commissions upon certain contracts which he should obtain for defendant for the manufacture of war material which might be used by the British, French, Russian or Italian governments. The contract was contained in a letter written to plaintiff by defendant, dated February 10, 1915, which letter reads as follows:

"2 Rector Street, NEW YORK, *February* 10*th*, 1915.
" S. W. TRAYLOR, Esq.,
"New York City, New York:

"DEAR SIR.— Confirming our talk with you of this date, it is hereby agreed that you shall be our exclusive representative for the sale of war material such as now is or may be used by the British, French, Russian or Italian Governments, or either of them, and can be manufactured by us.

" It is understood and agreed that all contracts are to be submitted to us for approval, before they shall be accepted, and after acceptance, we shall assume all responsibilities and obligations in connection therewith.

" In consideration of your services, we agree to pay you as compensation seven and one-half per cent. (7½%) of the gross amount of said contract, which said compensation shall be paid to you as and when payments are made to us, and 7½% shall be paid to you regardless of whether or not said contracts are placed with us direct or through you. This contract shall not apply to shell of less than 4.5″ calibre, or to quotations contained in letter bearing even date herewith up to March 10th, 1915; after March 10th, 1915, the shell enumerated in said letter shall be considered a part thereof.

" It is understood and agreed that you shall use your best endeavors to negotiate and secure business for us and that you shall pay your expenses and costs of your cables and we shall pay for all cables sent by us.

" This contract shall continue in full force and effect until peace shall have been declared between the nations now at war in Europe, either party hereto, may, however, cancel this contract by giving four months' notice in writing to the other.

" Very truly yours,

" CRUCIBLE STEEL CO. OF AMERICA,

" Accepted:                    HERBERT DUPUY, *Chairman.*

" S. W. TRAYLOR,
" *February 11th,* 1915."

Thereafter he procured eight contracts from the British government for the manufacture of various sized shells. Some of these were in form of orders which were accepted by defendant. But upon their acceptance they became contracts which were without doubt contemplated by the agreement between plaintiff and defendant. Two of those contracts were fully performed. The other contracts were all to have been performed on or before December 31, 1915, and upon the inability of defendant to tender performance upon the date specified in the contract defendant's time to perform was extended to December 30, 1916. Upon the extended date the defendant made default and the contracts were canceled by the British government. Upon the contracts so far as they were performed defendant has been paid in full, and had before the commencement of the action paid to plaintiff a part of the commissions due to him. This action was brought to recover seven and one-half per cent commissions upon the gross amount of the contracts including the unpaid commissions upon payments made to defendant by the British government.

The justice stated to the jury that three questions were to be determined in arriving at a verdict: *First,* was it intended by the parties to provide for payment of commissions upon uncompleted contracts upon which the defendant received nothing from the British government? *Second,* did the defendant use all the efforts within its reasonable control to

fulfill the contracts with the British government? *Third,* did plaintiff agree for a valuable consideration to waive commissions on the contract for the five-inch shells when it undertook to manufacture part thereof as a subcontractor of defendant. The jury found for the plaintiff for the sum of $198,724.36. The figures involved are not in dispute. The verdict indicates the finding of the jury that the plaintiff was entitled to recover commissions on all moneys received by defendant under its contracts with the British government, but was not entitled to recover any commissions upon the contracts which were not executed and for which payment was not made. Under the charge the jury might have based its conclusion upon the finding that the parties so intended by the contract and that the contracts with the British government all provided that defendant should not be held liable upon the contracts if it did not fulfill " by reason of strikes or fires or act of God or other causes beyond their reasonable control." The claim of the plaintiff upon the gross contracts amounts to upwards of $593,000. Upon this appeal plaintiff contends that the jury had no legal right to reject any part of his claim upon the grounds stated.

We are of the opinion that the learned trial justice should not have submitted either one of these questions to the jury. Confessedly there was no fire, no strike, no act of God which prevented the performance in full by defendant. The manufacture of shells of these sizes was a new enterprise in this country. The defendant had faith that it could perform the contract. The manufacture involved more complications than had been anticipated. There was some delay in constructing its plant, but this was more than offset by the extension of time given by the British government. The failure to perform arose largely through inefficiency in management and lack of knowledge of necessary methods. Defendant was experimenting and had not finished its experiments when the contract date and extended contract date had passed. There was some difficulty in procuring materials, but the extended date of the contracts was December 30, 1916, and this country did not enter the war until April 6, 1917, so that the government had not assumed control either of production or transportation. These causes clearly were not intended to be

included within the phrase " other causes beyond their reasonable control." The rule of *ejusdem generis* controls the construction of this phrase in the contracts, and this phrase, following the specification of " fires, strikes or act of God," refers to some extraordinary cause and not to those problems which must naturally be anticipated as to performance. The defendant then can alone rely upon the construction by the jury of the provision that the plaintiff was to be paid only " as and when payments are made to us." If this were a contract for commissions for the sale of real estate, the inability of the vendor to furnish title is no defense to an action by the broker, whether or not the defect be known to the vendor at the time of the making of the contract of sale. Such a contract providing for payment of commissions " as and when received " from the purchaser is no defense if the title fails or time for payment is extended without consent of the broker. (*Colvin* v. *Post Mortgage & Land Company*, 225 N. Y. 510.) This contract made payment of the contract installments and payment of commissions coincident only if the defendant performed. If defendant failed through inability to perform other than from causes specified in the contract of sale, the commissions became due at least at the extended contract date. This construction would be given to the ordinary brokerage contract. In this contract, however, the plaintiff's right of recovery is fortified by the provision that all contracts are to be submitted to defendant for approval before they shall be accepted " and after acceptance we shall assume all responsibilities and obligations in connection therewith." Now, these contracts were to be made by plaintiff as the " representative " of defendant. It was the known agency for a substantial principal which made possible the obtaining of the contracts. While perhaps not necessary to the conclusion which we reach, nevertheless, this provision may fairly be interpreted to mean that the plaintiff has earned his commission when he produces a contract which defendant approves but payment thereof is to be delayed until defendant has received the price of performance, for which performance it assumes full responsibility. We find no ambiguity in the contract which makes competent parol evidence. Its import

seems clear and upon the facts shown we think plaintiff is entitled to commissions upon the gross amounts of the contracts.

The judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event. The finding of the jury as to the first question submitted is reversed.

DOWLING, PAGE and GREENBAUM, JJ., concur; CLARKE, P. J., dissents.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide the event. Settle order on notice.