WILLIAM WELLS, Appellant, v. GEORGE FISHER, Respondent.

Fourth Department, May 2, 1923.

Vendor and purchaser — action to enforce option to sell real property — provision in lease that tenant shall have first privilege of purchasing property on stated terms is enforcible option — "privilege" is synonymous with "option."

A provision in a lease that the tenant shall have the first "privilege" of purchasing the leased property on terms specified in detail, is a valid, enforcible option and does not depend upon the desire of the landlord to sell at the time the tenant may elect to take advantage of the provision.

The word "privilege" is synonymous with the word "option."

CLARK, J., dissents.

APPEAL by the plaintiff, William Wells, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 1st day of May, 1922, upon the decision of the court rendered after a trial at the Onondaga Special Term dismissing the complaint upon the merits.

J. Kent Wright [Wordsworth B. Matterson of counsel], for the appellant.

Welch & Welch [Walter J. Welch of counsel], for the respondent.

DAVIS, J.:

The action was originally brought to compel specific performance of an option to sell certain real property. The option was contained in a lease of the premises for a term of ten years made by defendant to plaintiff and executed October 3, 1914.

The language used was as follows: " It is further agreed by and between the parties hereto that the party of the second part is to have the first privilege of purchasing said building and premises of the party of the first part on the first day of October of any year during the term of this lease for the sum of twenty-three thousand dollars ($23,000), plus the cost of the building of the water closet

hereinbefore mentioned, the said twenty-three thousand dollars ($23,000), plus the cost of building the closet, to be paid as follows: the said William Wells is to pay George Fisher, his heirs, executors, administrators or assigns the sum of Five thousand dollars ($5,000) at the time of purchasing said property, at which time the said George Fisher agrees to take back a bond and mortgage for Eighteen thousand dollars ($18,000) plus the cost of building the closet herein mentioned, to secure the balance of said purchase price, which mortgage is to bear interest at the rate of six per cent per annum, payable annually, the principal sum of which mortgage is to be paid as follows: The sum of Fifteen hundred dollars ($1500.00) together with interest on the unpaid principal, on the first day of October of each and every year after the date thereof, the said William Wells to have the privilege of paying as much more than Fifteen hundred dollars ($1500.00) on the principal sum as he desires in any year, provided he pays the same when the interest becomes due and payable as herein specified."

On September 2, 1921, plaintiff notified defendant he desired to close his option. On October first the defendant gave notice he would not sell.

After service of an answer the plaintiff apparently had doubt of the meaning of the option and amended his complaint so as to ask first for reformation and then for specific performance. He might well have stood his ground.

The defendant contends here, as on the trial, that the language quoted from the lease gives the plaintiff the privilege to buy at the times and on the terms stated only in the event defendant desired to sell. If that is so the provision was practically meaningless and the privilege worthless. The lease contains no express language making such reservation, and it is not to be supposed the parties were at such pains as to provide for every emergency and the details of a possible purchase and sale, when it might be entirely illusory, depending on the whim of the owner. It is claimed, too, that the term " first privilege " has a limited meaning not amounting to an option.

An " offer giving time for acceptance " is called by different names in different localities. The general term is " option." It may be " refusal." (*Savage* v. *Salem Mills Co.*, 48 Ore. 1; 13 C. J. 294.) On the Stock Exchange it may be a " put " or " call." (*Story* v. *Salomon*, 71 N. Y. 420.) In the sale of land it is simply a contract by which the owner agrees with another person that he shall have the right to buy his property at a fixed price within a time certain. He sells the right or *privilege* to buy at the election or option of the other party. (*Ide* v. *Leiser*, 10 Mont. 5.) Such a

contract is but a right of election in the party receiving the same to exercise a *privilege*. (*Cameron* v. *Shumway*, 149 Mich. 634.)

In Bouvier's Law Dictionary (Rawle's 3d rev. p. 2421) " option " is defined as " A contract by which A, in consideration of the payment of a certain sum to B, acquires the *privilege* of buying from or selling to B, specified securities or property at a fixed price within a certain time."

There may be successive options given to purchase land. The party having the first option would have priority over those of a later date subordinate and subject to the exercise of the one first granted.

Therefore, when these parties stated in writing that plaintiff was " to have the *first privilege* of purchasing," they used the very language by which an option is defined, and there can be little doubt of their intent. If there was doubt as to the local meaning of the words " first privilege," then parol testimony was competent to establish that meaning. (*Cream of Wheat Co.* v. *Crist Co., Nos. 1 & 2*, 166 App. Div. 870; 22 C. J. 1207.)

Furthermore, in construing such a contract the intention of the parties is not to be gathered from one phrase alone disconnected from all others, but from all the language used. (*Nassau Hotel Co.* v. *Barnett & Barse Corp.*, 162 App. Div. 381, 383; affd., 212 N. Y. 568; *Heryford* v. *Davis*, 102 U. S. 235, 244.) Any doubt should be resolved against the grantor who, having the power to stipulate in his own favor, has neglected to do so. (*Allerton* v. *N. Y., L. & W. R. Co.*, 199 N. Y. 489, 495; *Stetler* v. *North Branch Transit Co.*, 258 Penn. St. 299.)

The practical effect of the agreement was that on any October first, the plaintiff having given notice had the " first privilege " or option to buy on the terms stated. If he failed to exercise the right, the defendant was at liberty to sell to another on his own terms. If he did not sell, the life of the privilege continued during the term, and defendant was bound to sell if the option was exercised. (*Stetler* v. *North Branch Transit Co., supra; Schroeder* v. *Gemeinder*, 10 Nev. 355; *Savage* v. *Salem Mills Co., supra.*)

The complaint and evidence were sufficient to warrant granting the plaintiff the ultimate relief he sought, notwithstanding the unnecessary efforts he made to reform the contract.

The judgment should be reversed on the law and the facts, the findings disapproved and new findings made in accordance with this opinion, and judgment granted thereon in favor of the plaintiff, with costs in this court and at Special Term.

All concur, except CLARK, J., who dissents and votes for affirmance.

Judgment reversed on the law and facts and findings disapproved and new findings to be made in accordance with the opinion and judgment directed thereon in favor of the plaintiff, with costs in this court and at Special Term. Order including new findings to be settled before DAVIS, J., on two days' notice.