JAMES V. DOWNEY, as Trustee of WABASH FUEL COMPANY, INC., Bankrupt Respondent, *v.* CLARK SHIPSTON, Appellant.

Fourth Department, June 29, 1923.

**Sales — action to recover price of coal — counterclaim based on failure to deliver as agreed under prior contracts — prior contracts were made subject to strikes, car supply, etc., and conditions over which plaintiff had no control — orders were based on present mining and day wage scale and provided that any change therefrom would affect price — title was to pass upon delivery to railroad for shipment — shipments were to be made at once — plaintiff was not justified under evidence in canceling contracts under conditions and reservations therein — issues not properly presented to jury.**

In an action to recover the purchase price of coal, the defendant interposed a counterclaim based on the failure of the plaintiff to deliver coal as agreed under prior contracts. The prior contracts, three in number, provided that

they were accepted subject to strikes, car supply and government control, and any and all conditions over which the plaintiff had no control, and were based on present mining and day wage scale, with the condition that any change therefrom would affect the price, and it was also provided that the title to the coal, which was to be shipped at once, passed when delivered to the railroad for shipment. Shortly after the contracts were made the price of coal advanced greatly and the plaintiff then repudiated the contracts by writing to the defendant that owing to conditions beyond its control, namely, embargo, railroad strikes, car shortage, and inability to place cars at the mines, the orders were accepted subject to its ability to ship.

*Held,* that as to two of the contracts the evidence would have justified the jury in finding that they were abandoned and new contracts made for a supply of coal;

That as to the third contract, there was no evidence that the plaintiff was justified under the provisions thereof in not delivering coal in compliance therewith.

The issues on the trial concerned the right of the plaintiff to cancel the contracts and the time when that right accrued, if at all, and whether or not agreements of modification were made and if so, when made, and the right of the defendant to recover damages for breach of the contract or those accruing prior to any modification. These questions and the question of damages were not clearly presented so that they could be properly considered by the jury. The judgment should be reversed and a new trial granted.

Appeal by the defendant, Clark Shipston, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 23d day of June, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of June, 1922, denying defendant's motion for a new trial made upon the minutes.

*Leggett & Thibaudeau* [*Augustus Thibaudeau* of counsel], for the appellant.

*Joseph A. Stone* [*James O. Moore* of counsel], for the respondent.

Davis, J.:

The action is to recover for the price of coal sold by Wabash Fuel Company, Inc., to defendant during the year 1920. The defense consists chiefly of counterclaims for damages for failure to deliver coal as agreed.

Since the action was begun the Wabash Fuel Company has been adjudged a bankrupt, and James V. Downey became the trustee, but for clarity and brevity we will continue to speak of the corporation as the plaintiff.

The cause of action arose out of three contracts in writing made between the plaintiff and defendant on May 4, 1920. The plaintiff was a corporation recently organized with small capital, engaged as a jobber in coal. It owned no mines. The defendant was a wholesale and retail coal dealer and had some special customers who took coal in considerable quantities. The contracts were made

after preliminary negotiations in which the defendant was seeking to get a price named for the coal he needed, and the plaintiff's president was evidently making investigations so that he could quote a price.

The contracts as finally entered into were known as B1245, B1246 and B1247. The first provided for shipment of 2,000 tons of three-quarter lump coal to the American Sales Book Company at Suspension Bridge, N. Y. (one of defendant's customers) at three dollars and seventy-five cents per ton, with freight to follow, and rate of shipment at once. The second was a similar contract for shipment to another customer, W. A. Rogers, Ltd., and the terms were the same except the grade was Pittsburgh three-quarter lump and the amount was 1,000 tons. The third was to be shipped to the defendant for his yards at Suspension Bridge, and was identical with the second except that the amount was 2,000 tons.

The parties agree that the shipment " at once " means that the shipments were to start at once and continue.

The written contracts contained, among other provisions, these two that are important:

" All orders are accepted subject to strikes, accidents, car supply, labor supply, government control, or any change in State or Federal taxation laws that affect same, and any and all conditions over which we have no control, and are based on present mining and day wage scale, and any change therefrom shall affect price herein named accordingly, this applying on either a declining or advancing scale."

" Consignor assumes no risk whatever after the coal has been accepted by the railway company for transportation, but coal becomes the property of consignee when so accepted by the railway company, and consignee must look to the railway company for delivery of coal and any loss *en route.*"

Shortly after these contracts were made there appears to have been a sudden great rise in the price of coal in the Pittsburgh district and elsewhere. Just what caused it does not satisfactorily appear. On May seventeenth the plaintiff wrote defendant referring to the orders it had taken, saying: " Owing to conditions beyond our control, namely, embargo, railroad strikes, car shortage, and inability on the part of the railroads to place cars at the mines for loading and transporting same to you, we are forced to advise you that the above orders are accepted subject to our ability to ship." The letter in effect repudiated the contracts, and it is not claimed by the plaintiff that it ever attempted to perform them. Instead it delivered under what it claims were subsequent agreements, an inferior grade of coal at a greatly increased price.

The plaintiff seeks to recover for the coal subsequently delivered, and the defendant's counterclaim is based upon the non-performance of the original contracts.

In considering the respective rights of the parties it is perhaps well to state preliminarily a few legal principles applicable to the situation. It was the duty of the plaintiff when it made the contracts to place itself in a position by adequate contractual relations to obtain coal to fill them to the extent of the quantity contracted to be delivered to the defendant. In other words, having no mine of its own upon which it could rely, unless it was assured that it would at all times be able to purchase coal in the open market to fill these contracts, it was bound to protect the defendant. (*De Grasse Paper Co.* v. *Northern N. Y. Coal Co.,* 190 App. Div. 227.) If after the contracts were made, performance became difficult or costly to plaintiff, such fact is no adequate excuse or justification for non-performance, nor do such conditions relieve plaintiff from its obligation to pay damages (*Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377; *Traylor* v. *Crucible Steel Co.,* 192 App. Div. 445; affd., 232 N. Y. 583; *International Paper Co.* v. *Rockefeller,* 161 App. Div. 180; *Chicago, Milwaukee, etc., Railway* v. *Hoyt,* 149 U. S. 1); and the plaintiff was at all times under the obligation of good faith and fair dealing to attempt to carry out the contracts, no matter at what loss to itself, without searching for excuses, however plausible they might be, for non-performance. (*New York Central Iron Works Co.* v. *U. S. Radiator Co.,* 174 N. Y. 331; *Wheeler Co.* v. *Mendleson,* 180 App. Div. 9.) Extraordinary conditions supervening after the contract is made do not of themselves excuse performance. (*Maryland Dredging Co.* v. *United States,* 241 U. S. 184.)

The plaintiff to justify its cancellation of the contract and subsequent non-performance and its claim to recover for coal subsequently shipped to defendant, must establish (1) that the contracts were abrogated or modified by mutual consent; or (2) that under the conditions and reservations contained in the contracts, it was justified in canceling them.

(1) As to the contracts B1246 and B1247 with the Rogers Company and defendant individually, there is sufficient evidence so that the jury would have been justified in finding that the original contracts were abandoned and new contracts made for a supply of coal. As to contract B1245, there is little satisfactory evidence that either the sales company, who was to receive the coal, or the defendant, who was the contractor responsible to its customer, abandoned or relinquished claim on the plaintiff for performance under the contract, although it is evident that

defendant did his best to obtain coal for the sales company at any available price.

(2) The outstanding fact is that the plaintiff did get and deliver coal to the defendant and others. Evidently it was only a question of price. Its president admits that it was able to get and distribute 365,000 tons that year, receiving $2,250,000 therefor. Practically all of it was distributed on " open market sales," sold on miscellaneous orders that were coming in from day to day, and he had contracts for only 6,000 tons. He admits he was getting carloads of coal every day. The plaintiff's explanation why it did not perform the contract in question does not appear to be very satisfactory or convincing. It did deliver at least three cars to defendant early in July at $3.75 per ton. That would indicate delivery was possible, if delayed.

In the light of these facts, let us analyze the reservations in the contracts excusing performance. The switchmen's strike it appears began April sixth, and was in operation before the contract was made. There is no evidence of other strikes, although this particular strike caused more serious inconvenience at some times than at others. There is some evidence that the car supply to the mines was interfered with, but the testimony on that subject is general and indefinite. The plaintiff fails to show that the lack of car supply was the proximate cause for the cancellation of the contract on May seventeenth, or thereafter prevented delivery under the contract. There is no proof of any change in the mining and day wage scale at the times which directly affected the price. We do not agree with the learned trial court in his interpretation of that part of the contract which is in effect that the contract was to follow the market, either a rising or falling scale, dependent upon the demand or price at the mine, regardless of what condition produced such price. Rather, we think that the scale depended upon any change in the wages of miners, increasing or decreasing the cost of production, and likewise in expenses of running the mine, overhead, and delivering the coal to the railroad. In our view it did not depend upon fluctuations in price from day to day of a purely artificial character, especially where profiteering was engaged in. To take any other view would be to say that the price fixed in the contract had no significance at all. If there is any doubt or ambiguity as to this clause, it must be construed against the plaintiff whose language it was, and who having power to stipulate in its own favor, has neglected so to do. (*Herrman* v. *Merchants' Ins. Co.*, 81 N. Y. 184; *Schumacher* v. *Great Eastern C. & I. Co.*, 197 id. 58; *Wells* v. *Fisher*, 205 App. Div. 212.)

As to other conditions beyond the control of the plaintiff, such as embargoes, priority orders and preferences granted by the government or through the Interstate Commerce Commission, it does not appear that any such orders were made until July twentieth, effective July twenty-sixth, so that the plaintiff may not avail itself of those reasons for canceling the contract May seventeenth, and failing to make delivery prior to the time such orders took effect. There is strong evidence · that not only the plaintiff but other dealers were able to and did get and distribute Pittsburgh coal, as well as coal from the Ohio fields during the time these contracts were operative. If there was any trouble in distributing coal to the defendant through Buffalo, it was no concern of plaintiff. Its duty was discharged under its contract when it loaded its cars in the Pittsburgh district and delivered them to the railroad. As to the sales company contract, it did not by its terms require delivery of Pittsburgh three-quarter lump, so plaintiff could have delivered, or tendered at least, on this contract three-quarter lump or any kind of coal, which defendant did subsequently accept.

The issues on the trial concerned the right of the plaintiff to cancel the contracts, and the time when that right accrued if at all; whether or not agreements of modification were made, and if so, when made; and the right of the defendant to recover damages for breach of the contract, or those accruing prior to any modification. We think these questions were not clearly presented to the jury for determination; and there was a sharp conflict in several instances between the instructions given in the main charge and those given on requests. If we may say the general verdict has decided certain of these issues adversely to the defendant, then such verdict is against the weight of evidence. Furthermore, the question of the defendant's damages was never so presented to the jury on any basis of instructions as to their nature or the measure to be applied, so that it would be rationally considered. Ordinarily, when a plaintiff has recovered and the defendant's counterclaim has been rejected by a jury, any error in the submission of the measure of damages would be unimportant; but that rule is not applicable here, where in all practical aspects the question of defendant's damages was not submitted at all, and the jury had no choice but to follow the path of least resistance and find in favor of plaintiff. To summarize, we feel uncertain that any question has been so considered and determined that the ends of justice have been satisfied.

We think this case is one where a more satisfactory result would be reached by a trial before a referee. There are no difficult questions of law involved, but the facts are very complicated. There,

after time for deliberation, specific findings might be made as to the several questions in sharp dispute. It is evident from the nature of the claims of the parties and the numerous exhibits, some containing masses of figures, that a general verdict by a jury must always be indefinite and inconclusive as to just what has been decided. We do not attempt to say that the case is one for compulsory reference for that question is not here.

The judgment and order appealed from should be reversed on the law and on the facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed on the law and facts and a new trial granted, with costs to appellant to abide event.