[Civ. No. 13412.   First Dist., Div. One.   July 31, 1947.]

A. M. FALKENSTEIN et al., Appellants, v. HULDA M. POPPER, Respondent.

Terence J. Boyle for Appellants.

Franklyn M. O'Brien for Respondent.

BRAY, J.—The trial court granted defendant's motion for judgment on the pleadings in an action for specific performance of an option to purchase, on the ground that the complaint did not state a cause of action.

On April 25, 1942, the parties entered into a five-year lease of certain business property in San Francisco. The only part of the lease pertinent to this appeal is paragraph 23, subdivisions (a) and (b): "Lessor hereby gives to Lessee an opportunity to purchase the real property and improvements known as No. 4116 Geary Boulevard Street, in the City and County of San Francisco, State of California, at and for the agreed price of Eight thousand, five hundred (8,500.00) Dollars, lawful money of the United States, upon the following terms and conditions, to-wit:

"(a)   For the period of two (2) years, Lessee shall have the exclusive option to purchase said property for said price; said option shall expire May 1, 1944.

"(b)   *For the remaining period of said term, to-wit, three (3) years, Lessee shall be given the first opportunity to purchase said property for said price; and in the event that Lessee shall not avail himself of said opportunity and shall not desire to purchase said property, Lessor shall then be free to sell said property to any other person for any price agreeable to her.*" (Emphasis added.)

Subdivision (a) is not involved on this appeal (except as it relates to the construction to be given subdivision (b)), as the plaintiffs did not demand a conveyance of the property until February 8, 1946, almost two years after the expiration date given in subdivision (a).

Plaintiffs contend that subdivision (b) is ambiguous and therefore the court should not have granted judgment on the pleadings but should have permitted the introduction of evidence to explain the alleged ambiguity. The court held that subdivision (b) is not ambiguous, and shows on its face that it grants an option to plaintiffs to purchase only in the event that defendant desires to sell. The complaint

contains no allegation that defendant desires to sell. The theory of the complaint is that plaintiffs had an exclusive option to purchase under subdivision (b).

A study of all of the provisions of paragraph 23 shows that the court was clearly right. Plaintiffs, to sustain their contention, completely ignore the relationship of subdivision (a) to subdivision (b)—"we claim we are in the same position now as we were during the first two years." In construing the agreement here, the court must give some meaning to subdivision (a) in its relation to subdivision (b), for if the parties intended that the plaintiffs were to have an exclusive option to purchase for the entire five-year term of the lease there would have been no reason for subdivision (a), which expressly gives an "exclusive option to purchase" for only two years. It is obvious that after giving the limited exclusive option in subdivision (a), the lessee in subdivision (b) was given the first opportunity to purchase in the event that during the balance of the leased term, the lessor decided to sell.

Plaintiffs rely upon certain cases construing words similar to "opportunity" and "first opportunity" used here. In none of the cases was there a situation where there was involved, as here, two clauses in an option to purchase, and hence the cases are not in point. Moreover, the cited cases follow the minority rule on this subject. These cases are: *Tantum* v. *Keller* (1924), 95 N.J.Eq. 466 [123 A. 299], where the court construed "first privilege . . . to purchase . . . at any time" as an exclusive option. In *R. I. Realty Co.* v. *Terrell* (1930), 254 N.Y. 121 [172 N.E. 262], the Tantum case was noted as following the minority rule. *Schroeder* v. *Gemeinder* (1875), 10 Nev. 355, in considering a similar phrasing to the Tantum case, followed its rule. In *De Rutte* v. *Muldrow* (1860), 16 Cal. 505, "the privilege of purchasing . . . during the continuance of this lease . . . in preference to any other persons" was held to grant an unconditional right to buy. In *Wells* v. *Fisher* (1923), 205 App.Div. 212 [199 N.Y.S. 594], the provision read: ". . . the first privilege of purchasing . . . on the 1st day of October of any year during the term. . . ." This case was expressly disapproved in *R. I. Realty Co.* v. *Terrell, supra,* as was the case of *Stetler* v. *North Branch Transit Co.* (1917), 258 Pa. 299 [101 A. 980], where the provision was "if at the expiration

of this lease [the lessees] . . . shall desire to re-lease . . . they shall have the first privilege of re-leasing.'' Plaintiff there contended that the words ''first privilege'' meant that at the end of the term, the lessee had only a first right to re-lease, provided the lessor was willing at that time to lease to anyone. In holding that it was an absolute right in the lessee, the court stated as follows: ''The court below, however, held that it was apparent from the provisions of the lease that the parties contemplated the use of the land for a park for the entertainment of the public, and that considerable expenditure for improvements would be necessary. Under these circumstances, when the lease was executed, the parties evidently felt that a renewal or extension would probably be desired, otherwise the clause in question would not have been inserted. It was clearly intended for the benefit of the lessee, and it should be so construed as to preserve that benefit, if it be possible to do so. But as the court below well says: 'If the plaintiff's theory as to the meaning of the paragraph is to be accepted, it would, so far as the lessee is concerned, become wholly meaningless, and might as well have been omitted.' '' (p. 981 [101 A.])

Plaintiffs contend that the reasoning in the last sentence above quoted should be applied in the instant case. However, applying that language here, if the plaintiff's theory that subdivision (b) granted them the same exclusive option as did subdivision (a) is to be accepted, subdivision (a) would ''become wholly meaningless, and might as well have been omitted.''

In *Butt* v. *Maier & Zobelein Brewery* (1907), 6 Cal. App. 581 [92 P. 652], the provision was far removed from that under consideration here. After providing in clause 1 that the lessor at the end of the period of a lease could terminate it upon payment to the lessee of the cost of improvements made by the latter, the agreement, in clause 2, continued as follows: ''At the expiration of this lease the said second party shall have the prior right to lease the same, said premises, for a further term of five years, for the rental sum of'' etc., fixing terms of payment. It further provided that should the lessee avail itself of the renewal, the lessor, at the end of the second five-year term, could take the property back without paying for improvements. Obviously, the word ''prior'' as used therein does not qualify the right of renewal, but it is used with entirely different language than

is the word "first" in the provision here in question. "Prior" as used, could only mean that the lessee could defeat the termination of the lease after the first five-year period provided for in clause 1, by exercising the right of renewal provided for in the second clause, and should he so choose, his rights under the latter clause would be prior to, and nullify, the rights of the lessor under the former clause.

In none of the cases cited by plaintiffs did the option clause vary the conditions of purchase at stated periods, as in our case where the conditions for the first two years are in definite contrast with the conditions for the balance of the term.

Moreover, the weight of authority holds that the use of such words as "first privilege," "first right," etc., does not give the lessee an absolute right to purchase or renew a lease. In *R. I. Realty Co.* v. *Terrell, supra,* (172 N.E. 262), the clause in a lease of real property read: "Said party of the second part is given first privilege to buy said property" for a stated sum. The lessee elected to purchase and the lessor refused to convey. The contentions of the parties were identical with those of the instant case, the lessee claiming an absolute right to purchase and the lessor claiming that this right was dependent upon his willingness to sell, in which case the former would have prior right over other prospective buyers. The court held that the clause did not give the lessee a valid option requiring the lessor to convey at any time during the term of the lease upon demand and payment by the lessee, but rather that the right to purchase depended upon the lessor's desire to sell at the price named, in which event the lessee would have the "first privilege" to buy. The interpretation of the words is as follows: "In construing the clause in question, the court is required to give some meaning to all the words used. To construe the clause in accordance with the contention of the respondent (lessee) would require that the word 'first' be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. (*Sandberg* v. *Reilly,* 223 App.Div. 57, 227 N.Y.S. 418, affirmed 250 N.Y. 547, 166 N.E. 319.) Therefore, it must have been used to prevent the agreement from constituting an absolute option to sell. The phrase 'first privilege to buy' and the words 'privilege to buy' have an entirely different meaning; one is conditional and the

other absolute.'' The court further pointed out and disapproved of *Wells* v. *Fisher, supra,* as being the only New York case holding to the contrary. The Stetler and Tantum cases, supra, were also noted as contrary decisions in other jurisdictions. The court cited and followed the rule of numerous New York decisions to the same effect as that rendered therein.

In *Buddenberg* v. *Welch* (1933), 97 Ind.App. 87 [185 N.E. 865], the lease provision read that the lessor granted to the lessee ''the first and prior right and option to re-lease said premises for an additional term of five (5) years from the expiration of this lease'' on the same terms. After quoting from *Blythe* v. *Gibbons,* 141 Ind. 332 [35 N.E. 557], to the effect that in the interpretation of agreements first resort is to the natural significance of the words employed, and if such words embody a definite meaning, without contradiction or absurdity, there is no room for construction, that meaning controls, and neither the courts nor legislatures can detract therefrom, the opinion continues: ''Applying this principle of construction, we hold that the words *'first and prior'* mean that if the lessor decides to re-lease the premises for a further term, the lessee shall have a first and prior option to re-lease the same. To give this language any other interpretation would do violence to the common rules of construction of written instruments. We cannot say that the parties to this lease put the words 'first and prior' into this lease, intending that they mean nothing. If the lessor had intended to give the lessee the right at his option to re-lease said premises, he would have positively said so; and he would not have used the words 'first and prior,' for there would have been no necessity for such language. Ordinary usage of the English language would not permit any other interpretation. We are sustained in this view by the greater weight of authorities.''

A clause providing that the lessee should have the ''first right to re-lease'' for a further term of three years on the same conditions and terms was held not to give an absolute right to re-lease, but merely a preferential right in the event lessors desired to lease. (*Coverdale Co.* v. *Littlefield,* 240 Mass. 129 [133 N.E. 565].) To the same effect is *Landowners Co.* v. *Pendry* (1940), 151 Kan. 674 [100 P.2d 632, 127 A.L.R. 890], where the lease provided: ''The parties of the second part shall have the right to the first option in case

they may desire to continue to occupy said premises under a new lease after the expiration of the present term." In *Hill* v. *Prior*, 79 N.H. 188 [106 A. 641], the lessor agreed to give the lessee at the expiration of the lease "the first right to a further lease." This was held to give the lessee only the right to a further lease if the lessor should desire to lease the property. To the same effect, as to "first privilege of renewal," *Holloway* v. *Schmidt*, 33 Misc. 747 [67 N.Y.S. 169]; *Walsh* v. *Ft. Schuyler Brewing Co.*, 83 Misc. 488 [146 N.Y.S. 160].

The provisions of subdivision (b) are clear and unambiguous. To hold otherwise, or that they have the exact meaning of the provisions of subdivision (a), would make subdivision (a) meaningless. Subdivision (a) gives an absolute option to purchase for the first two years of the term, while subdivision (b) gives a qualified right or "first opportunity" to purchase for the balance of the term, the latter right being subject to the lessor's determination of whether or not she desires to sell.

As the paragraph in question is not ambiguous, the rules of construction in the cited sections of the Civil Code, 1636, 1641, 1647, 1654, and 1649, and section 1860 of the Code of Civil Procedure, are not applicable. "The meaning of plain and ordinary words in common use is a question of law for the court." (13 C.J. 788.) "For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied." (Civ. Code, § 1637.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

We do not find it necessary to decide whether oral evidence is admissible to create an ambiguity in a contract which, as here, appears to be unambiguous. (See majority, concurring and dissenting opinions in *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665]; *Estate of Rule*, 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319].) Whatever the proper rule may be, it would seem to be quite clear that, where the contract is clear and unambiguous, before the party who claims the parties intended something different from what the words would seem to mean, can introduce parol evidence, he must put the fact of such intent into issue. In the present case the plaintiff simply pleaded the terms of the contract, and did not plead any intention different from the

express terms of the lease, nor that parol evidence was available to show an intent contrary to its clear meaning. The reporter's transcript contains the argument on the motion for judgment on the pleadings. It contains no offer of proof nor any reference to any available parol evidence. No contention is made in the briefs on appeal that plaintiff has available any parol evidence that would show that the parties intended something different from what the clear words of the contract appear to mean. This being so, it is quite clear that, under the circumstances of this case, the question of interpretation was one of law, and that the trial court properly interpreted the contract on the motion for judgment on the pleadings.

The judgment appealed from is affirmed.

Peters, P. J., and Ogden, J. pro tem., concurred.