Filed May 15, 1895.

---

No. 15,224.

BLYTHE ET AL., RECEIVER, *v.* GIBBONS.

RECEIVER.—*Continuance of Business.—Power to Borrow Money.—Lien on Assets.*—Where a receiver is appointed for a partnership, the court has the right to direct the receiver to continue the business, to borrow money for that purpose, and to make the amount borrowed a first lien on the property belonging to the trust estate in his hands.

SAME.—*Borrowing Additional Sums.*—An order to borrow a certain sum of money, and making the amount a first lien on the assets, does not preclude the court from making subsequent similar orders to borrow additional sums, and making them prior liens.

SAME.—*Liens for Money Borrowed by Receiver.—Prior Mortgage Liens, Release.—Borrowing Additional Sums.*—An order authorizing a receiver to make certain claims that were liens on the assets before a receiver was appointed "preferred claims upon said claimants releasing their mortgages to secure the same," and making such claims "preferred claims next to those who may loan the receiver money to carry on the business and to manufacture the materials on hand;" and authorizing him to borrow a certain sum for that purpose, making it a "prior claim for the articles manufactured and the notes received for the sale thereof," does not preclude the court, after the release of such mortgages, from making subsequent orders for the borrowing of additional sums and making such sums liens prior to the liens of such mortgages.

SAME.—*Parol Evidence to Interpret Order to Borrow Money and Fixing Priority of Liens.*—Parol evidence is not admissible to show what were the parties' understanding or agreement before the order to borrow money was entered; nor to add to or take away the effect of the language used in such order.

WRITTEN INSTRUMENT.—*Construction When not Contradictory and Meaning Plain and Apparent.*—In the construction of a contract, statute, judgment or order of court, the first thing to ascertain is the natural

signification of the words employed, in the order of the grammatical arrangement in which the framer of the writing has placed them; and if thus regarded they embody a definite meaning, which involves no absurdity and no contradiction between the different parts of the writing, then that meaning is the only one which can be adopted, and there is no room for construction.

From the Miami Circuit Court.

*J. Mitchell, R. P. Effinger, W. B. McClintic* and *Hord, Perkins & Miller,* for appellants.

*J. E. McCullough, H. N. Spaan, J. T. Cox* and *J. J. Rochford,* for appellee.

McCABE, J.—On the 27th day of November, 1883, the firm of Benjamin F. Dow & Co., doing business at Peru, Ind., in the manufacture of threshing machines and engines, became financially embarrassed.

Their principal creditors, at the time, were the First National Bank and the Citizens' National Bank, of Peru.

On the date named, said banks, by their attorneys, commenced suit upon the matured obligations of said firm in their favor, and asked the appointment of a receiver to take charge of the assets and business of said firm.

A receiver, the appellant James G. Blythe, was appointed in accordance with the prayer of their complaint, who was qualified, gave bond and filed an inventory.

At the time of his appointment it was made to appear to the court that a large proportion of the assets of said firm consisted of material in process of manufacture and notes taken in the course of the business of said firm, that could only be made available by a temporary and limited continuance of the business, and an order authorizing the receiver to so continue the business was made by the court below.

On taking charge of the business under such order of court, the receiver discovered that all the tangible per-

sonal property of said partnership had, previous to the commencement of the proceedings mentioned, been mortgaged by said Benjamin F. Dow & Co. to parties to secure certain claims against the said firm, principally in favor of certain near relatives of the several partners.

In order to continue the business at all in pursuance of the order of court, it was necessary for the receiver to borrow money for temporary use, as there was none in the assets of the firm that came to his hands.

For the purpose of negotiating the necessary loans the receiver applied to the same banks that were mentioned above as the principal original creditors of said insolvent firm. Both said banks, through their officers, expressed a willingness to loan money under proper orders of court authorizing the receiver to borrow it; but having knowledge of the mortgage upon the personal property above mentioned they declined to enter into negotiations until the same should be released by the several mortgagees, among whom was the intervening petitioner herein, William Gibbons.

By the first day of January, 1884, all of said mortgagees had entered upon the record of the mortgage in Miami county their several releases, except William Gibbons and three others.

With these parties, who were supposed to be *bona fide* creditors of B. F. Dow & Co., the receiver conditionally agreed that in consideration of the release of said mortgage by them they should be held, with the approval of the court, as creditors next preferred to those who should loan the receiver money for the purpose of carrying on the business.

To effectuate this purpose the receiver filed in court on January 15, 1884, his petition setting up the fact of the execution of said mortgage and the release thereof by all the mortgagees except said four creditors, to wit: William

Gibbons, Israel Judd, Mrs. David McDonald and Allen Richardson, alleging also the need to borrow money to continue the business and asking an order of court preferring these creditors in the manner named.

Upon said petition the court made an order, on the proper construction of which, whether by its own terms or by the aid of other evidence, rests the principal controversy in the case.

It is as follows:

"TUESDAY, JAN. 15, 1884.

"THE FIRST NATIONAL BANK OF PERU, ET AL.,  ⎫
                       *v.*                                      ⎬ 1,053.
"BENJAMIN F. DOW, ET. AL.                          ⎭

"Comes now Jas. G. Blythe, receiver herein, by "Messrs. R. P. Effinger, Shirk & Mitchell, his attorneys, "and files petition for authority to borrow the sum of "ten thousand dollars, for the 'purpose of working up "materials on hand, paying for labor and material and for "order preferring claim, which petition is in these words [h. i.] which petition the court grants.

"Said receiver is authorized to make claims of Israel "Judd for $370 and interest from Jan. 1, 1884; claim of "Wm. Gibbons for $2,871.81, with 6 per cent int. from "March 28, 1881; claim of Mrs. David McDonald for "$2,000 and Allen Richardson for.$348.21 and interest "from Sept. 1883, preferred claims upon said claimants "releasing mortgages to secure same, and are made pre-"ferred claims next to those who may loan receiver money "to carry on the business and to manufacture the ma-"terials on hand.

"And the said receiver is authorized to borrow ten "thousand dollars for that purpose, said sum to be a "prior claim upon the articles manufactured and the "notes received for the sale thereof."

Following the entry of said order, the said Wm. Gib-

bons entered upon the record of said chattel mortgage the following release thereof :

"This mortgage as to me Wm. Gibbons is fully satis-"fied, my debt having been secured otherwise, and I "hereby release the same this 18th day of January, 1884.

"WILLIAM GIBBONS.

"Attest: Wm. A. Gibney, R. M. Co."

Under this order of January 15, 1884, the said receiver borrowed money of these appellants to the full amount named therein, to wit: of the First National Bank the sum of eight thousand dollars and of the Citizens' National Bank the sum of two thousand dollars.

Subsequently, on further petitions by the receiver to the Miami Circuit Court, he was authorized to borrow the following named additional sums, for the purposes named in said petitions, as follows:

On petition of February 4, 1884, the receiver was authorized to borrow the additional sum of two thousand and twelve and $\frac{36}{100}$ dollars.

On petition of April 22, 1884, the receiver was authorized to borrow the additional sum of ten thousand dollars.

On petition of August 9, 1884, the receiver was authorized to borrow the additional sum of five thousand dollars.

On petition of May 13, 1885, the receiver was authorized to borrow the additional sum of three thousand dollars.

Nearly the whole of said several amounts so authorized, were by said receiver borrowed from these appellants, to wit: from said First National Bank the sum of $12,494.72, and from said Citizens' National Bank the sum of $7,096.21.

Receiver's certificates were issued by said receiver to the banks for the amounts borrowed, which certificates

were, under further order of the court, renewed from time to time as they matured. Payments were made on said certificates at different times, so that at the time of the trial of this cause, to wit: in June, 1888, there was due the First National Bank on said certificates thirteen thousand ninety four and $\frac{22}{100}$ dollars, besides some accrued interest; and to the Citizens' National Bank, six thousand two hundred and forty-nine and $\frac{28}{100}$ dollars, besides interest.

On the 17th day of January, 1885, and prior to that date, several of the former employes of Benjamin F. Dow & Co. had applied to the court for orders preferring their labor claims, not exceeding fifty dollars each, as against the claims of general creditors.

The appellee Gibbons on that day filed his first intervening petition in said cause alleging the filing of labor claims by the employes of B. F. Dow & Co., and claiming preference over them under the order of court of January 15, 1884.

No action on this petition appears of record, except that the "labor claims" were allowed and preferred. Also, report of receiver filed February 14, 1885, which report was approved November 12, 1885.

The appellee Gibbons, next appeared as intervenor in the case on the 8th day of April, 1886, at which time he filed affidavit and motion for permission to sue the receiver; of the filing of which motion, written notice was served on these appellants. ·

Thereafter, on the 1st day of July, 1886, he filed another petition, asking a cancellation of the release aforesaid, executed by him on the 18th day of January, 1884, and for other relief.

Afterwards, and before any action was taken upon this petition, to wit: on October 11, 1887, said appellee filed

an amended petition, in which he contended that under the order of the court of January 15, 1884, hereinbefore set out, he was entitled to have his claim against B. F. Dow & Co. preferred over all other claims and expenses of the trust, except the ten thousand dollars mentioned in said order. Said petition further alleged that the said ten thousand dollars had been repaid to these appellants, and he demanded immediate payment of his claim by the receiver.

Issues were formed on this petition.

The receiver filed answer in two paragraphs.

Demurrer was filed by Gibbons to the second paragraph of receiver's answer, which was sustained and exceptions taken.

The receiver then filed a third paragraph of answer.

To this third paragraph, Gibbons filed reply in two paragraphs, the second paragraph of which was subsequently withdrawn.

The First National Bank asked leave of court to be permitted to defend against said petition, and leave was granted.

The Citizens' National Bank also filed a like petition, with same result.

The First National Bank and the Citizens' National Bank each then filed a separate answer to the petition in two paragraphs.

To the second paragraphs of each of said answers last named, the said intervener filed replies in denial.

Each of the banks, before issues were closed in said cause, also filed a separate petition to the court to marshal the liens upon the funds in the hands of the receiver, and asking other relief.

Afterwards said Gibbons filed his motion to strike out both of said petitions last named, which motion the court sustained, and said banks severally excepted.

The cause was then submitted to the court for trial, and the court, on request of the parties, returned in writing a finding of facts in effect as above indicated, and stated its conclusions of law thereon, by which the court concluded substantially that by the terms of the order of court of January 15, 1884, and under the evidence in the case, the intervener, William Gibbons, was entitled to be paid his claim in full, next after the $10,000 borrowed under said order, thus giving him preference over claims for other moneys borrowed by the receiver, over creditors preferred by statute, and over all the legitimate expenses of the receivership.

Judgment was rendered on said finding and conclusions of law, directing payment within ninety days of the amount found due said Gibbons, to wit: The sum of $4,214.$\frac{28}{100}$, with interests and costs; which order was unconditional and absolute.

Exceptions were taken by all the appellants to the conclusions of law upon the finding of facts. Motions for judgment on the finding, for a *venire de novo*, for a new trial and for modifications of the judgment, were severally made, overruled and exceptions reserved.

The errors assigned by each of the appellants, separately, are as follows:

1st. That the court erred in striking out the cross-petition of each appellant.

2d. That the court erred in its conclusions of law on the findings of fact.

3d. That the court erred in overruling the motion by each appellant for a *venire de novo*.

4th. That the court erred in overruling motions for a new trial.

The controlling question is as to the correctness of the conclusions of law.

A vast mass of testimony was introduced concerning

oral negotiations, stipulations and understandings that preceded and followed the entry of the order fixing the priority of appellee's claim in case the appellee should release his chattel mortgage; this testimony was permitted to be introduced for the avowed purpose of establishing what the court had meant and intended in respect to the extent of the priority of appellee's claim over other claims.

It was attempted to be shown by such testimony that the appointment of a receiver to wind up the affairs of the failing concern of B. F. Dow & Co., and that the necessity of continuing the factory in operation until the material on hand was worked up and sold, were apparent and conceded on all hands in order to avoid greater losses to the creditors of the firm. To do this under the order of the court large sums of money were needed by the receiver. The money could not be borrowed from the banks unless the chattel mortgage liens on the property could be released.

And it was claimed by appellee that the oral negotiations and conversations by which the scheme was agreed upon and subsequently attempted to be carried out by the entry of the order already recited, establish that the understanding was that if appellee released his mortgage lien, pursuant to the order, he was to have a lien next in priority to the ten thousand dollars, which the order authorized the receiver to borrow to work up the material on hand; and that his lien was to be prior to all other liens, whether for other moneys borrowed by the receiver under subsequent orders of the court, or the costs of the receivership. The appellee was not a party to the order, nor was he bound by its terms unless he afterwards voluntarily surrendered his mortgage lien in consideration of the benefits of the order. Instead of relying on his previous understanding as to what the

order was to have been, he, like a prudent, careful man, went to the record where the order was entered, and carefully read and examined it before he would release his mortgage. On the strength of that examination he immediately entered the release of his mortgage already recited. There is no claim by him that there was any mistake or fraud in the entry of the order, or that he was misled by his attorney or anybody else as to the scope and meaning of the order. Under such circumstances we held, in *Straub* v. *Terre Haute, etc., R. R. Co.*, 135 Ind. 458, that the order or judgment can not be so construed as to carry out any previous or contemporaneous agreement or understanding not included in its terms where they are unambiguous. See authorities there cited. Are the terms of the order ambiguous? It is conceded on all hands that the order contained no limitation upon the power or authority of the court to authorize the receiver to borrow more money thereafter, had the appellee declined to accept the benefits of the order and declined to release his mortgage. Nor is it asserted by appellee's learned counsel that the law set any other limit to the power of the court to authorize the receiver to borrow additional sums than such as the best interest of the trust estate in his hands should require. The court had the lawful right to direct the continuance of the business in the hands of the receiver. High on Receivers, sections 36, 481; Kerr on Receivers, p. 256; Beach on Receivers, sections 284, 565; *Marten* v. *Van Schaick*, 4 Paige Ch. 479; *Crane* v. *Ford*, Hopkins Ch. 130. The court, in the exercise of its equity jurisdiction, had power to authorize the receiver to borrow money for proper purposes, and make the same a first lien on the property belonging to the trust estate in the hands of the receiver. *Wallace* v. *Loomis*, 7 Otto 146; *Woodruff* v. *Erie R. W. Co.*, 93 N. Y. 609; *Miltenberger*

v. *Logansport R. W. Co.*, 16 Otto 286; *Union Trust Co.* v. *Souther*, 17 Otto 591.

Any additional sums that the best interest of the trust estate in the receiver's hands required, the court had ample authority to authorize the receiver to borrow. This power existing, both under the order and without the order, it is difficult to see how the appellee could diminish or qualify that power by his act in releasing his mortgage and accepting the benefits of the order. Doubtless he could have declined to release his mortgage unless there was a provision added to the order making his claim prior to any other claim for money borrowed by the receiver under the order of the court in excess of the ten thousand dollars mentioned in the order. Had such terms been added to or contained in the order the conclusions of law would have been correct. But no such terms were required and none such are expressed in the order. The circumstance that appellee's claim is "made a preferred one next to those who may loan receiver money to carry on the business, etc.," is found in the same entry with an order authorizing the receiver to borrow ten thousand dollars for that purpose, furnishes no reason for saying that the court meant to make appellee's claim prior to those who may loan additional sums to the receiver for the same purpose under subsequent orders of the court. The evidence discloses pretty clearly that such an order as that would have found no one ready to invest money and would have prevented the receiver from borrowing any more money. No financier in his senses would lend money to carry on the business of a failing and insolvent partnership for the purpose of making the most out of the assets of the firm for the benefit of the general creditors if the repayment of his loans were to be placed on a common level with the claims of general creditors, and not to be made a preferred claim.

Appellee cites *Indiana R. W. Co.* v. *Adamson*, 114 Ind. 282, in support of his contention that parol evidence was admissible to explain the order and quoted from that case.   It is there said:   "A contract is to be read by 'the light of the surrounding circumstances.'   It would be productive of ¨confusion and injustice to take a contract and enforce it without regard to the situation of the parties and of the subject-matter.   *   *   *   A contract can not be isolated, and construed without regard to the circumstances under which it is made." That is true; but that rule is perfectly consistent with the one previously stated above that all previous oral negotiations, stipulations and understandings are to be deemed merged in the judgment which is the result of such previous negotiations and agreements.   The surrounding circumstances, however, that may be looked to in construing a written contract, order of court or judgment does not include previous or contemporaneous oral negotiations, stipulations and understandings of the parties.   Such previous or contemporaneous oral negotiations, stipulations or understandings were inadmissible in evidence for the purpose of affecting the interpretation of the order.

The court erred in admitting, over objection, all that class of testimony.

Nor was it proper to consider whether the receiver had managed the trust to the best interest of the creditors, to throw light on or explain the meaning of the order.

The appellee's counsel seek  to avoid what seems to us the natural meaning of the order, by contending "that it does not expressly make Gibbons a preferred creditor, and that it authorizes the receiver to do so; and the receiver informed him of the order and sent him to Mitchell."   Concede that to be so and it is difficult to

see how it could help appellee. There is no showing that the receiver had done so. It does say, in one place, "said receiver is authorized to make the claims of   *   *   William Gibbons for $2,871.84 (and others)   *   *   *   preferred upon said claimants releasing mortgages to secure the same," and then the order adds, "are made preferred claims next to those who loan the receiver money to carry on," etc. Whether we are considering an agreement between parties, a statute, a constitution, a judgment or order of court, with a view of its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the writing have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the writing, is the one which alone we are at liberty to say was the one intended to be conveyed. In such a case there is no room for construction. That which the words declare as the meaning of the writing is the true one, and neither courts nor Legislatures have a right to add to or take away from that meaning. *Newell* v. *People*, 3 Seld. 3 (97); *Evansville, etc., R. R. Co.* v. *Meeds*, 11 Ind. 273; *Beard* v. *Lofton*, 102 Ind. 408; *Fleenor* v. *Driskill*, 97 Ind. 27; Freeman on Judg., section 45; *Foot* v. *Glover*, 4 Blackf. 313; *Finnagan* v. *Manchester*, 12 Iowa 521; *Fowler* v. *Doyle*, 16 Iowa 534; *Bell* v. *Massey*, 14 La. Ann. 831; *Hopper* v. *Lucas*, 86 Ind. 43.

Applying these principles here, we have no hesitation in holding that the meaning of the order is that on the release of the appellee's mortgage his claim for the amount thereof became, without any further action of

the court or the receiver, a lien on the assets of the trust
estate in the hands of the receiver, next in priority to .
those who might thereafter loan the receiver money to
carry on the business, under the orders of the court, ob-
tained in good faith for the purpose mentioned; and that
said order does not mean that the priority of lien for
money thus loaned over appellee's claim is to be confined
to the ten thousand dollars the receiver was authorized
to borrow in the first order.

. The appellee filed two intervening petitions about a
year after the order was made seeking relief as to prior-
ity of his claim verified by affidavit, but in such verified
petition he makes no claim that the construction he now
places upon the order was the true one. The only ex-
cuse his counsel make for this significant act on
his part is that that fact ought not to have great
weight because his attorneys that prepared the
petition were also the attorneys for the receiver.
We can not see how that can lessen the weight to
be attached to his act, his sworn statement. There is
nothing in the record tending to show that they did not
faithfully represent appellee's interest in the matter, but
the contrary is plainly inferable from the record. At
no time did appellee contend for the construction now
sought to be maintained until the filing of the interven-
ing petition on which the trial and judgment below are
founded, which was more than two years after the order
was made. In one of his former intervening petitions
he sought to set aside the release and satisfaction of his
mortgage on the alleged ground that it was intended
only to be a partial release and that by mutual mistake
of the parties it had been made a complete release; he
asked also therein leave to sue the receiver to foreclose
his mortgage in case the court set aside the satisfaction
and release. Failing in all of which he filed the present

petition seeking to construe the order as now contended
for. If it were necessary to go beyond the terms of the
order in search of means of construing it properly the
conduct of appellee furnishes strong evidence that the
construction we have placed upon the order was the
proper one, and the one that all the parties to the trans-
action placed upon it. The court also so understood the
meaning of the first order, because in the subsequent
orders authorizing the receiver to borrow additional sums
of money, the orders read: such "amounts together with
other sums borrowed to be a preferred lien upon the
manufactured articles, etc." So that whether we look
at the language of the order considered alone and also
in the light of the surrounding circumstances, which we
hold are the exclusive medium of ascertaining its mean-
ing, yet the acts of all the parties and the court sub-
sequently all agree in placing the same construction upon
the order. We are of opinion that the court erred in its
conclusions of law. The finding of facts being too un-
certain to found a judgment upon, we do not order the
court to restate its conclusions of law. Therefore, the
judgment is reversed, the cause remanded with instruc-
tions to sustain the motion for a new trial and for further
proceedings in accordance with this opinion.

Filed Nov. 28, 1893; petition for rehearing overruled May 17, 1895.

## END OF NOVEMBER TERM.