BUDDENBERG *v.* WELCH

[No. 14,581.   Filed June 1, 1933.]

*Cassius W. McMullen,* for appellant.

*Estal G. Bielby,* for appellee.

SMITH, J.—Appellant brought this action against appellee in ejectment upon a complaint in one paragraph to recover possession of certain real estate.  The appellee answered in two paragraphs:  (1) General denial; (2) an affirmative answer setting up a lease to the premises in question which contained an option to release the same.  Appellee also filed a cross-complaint which set up the same matter as the second paragraph of answer; and asked for affirmative relief in that the appellant be required to execute to appellee a renewal lease, and be enjoined from interfering with the rights of appellee in the premises under the original lease.

To the affirmative answer and cross-complaint, appellant filed a demurrer to each which raised the same questions.  Both were overruled, and upon appellant refusing to plead further judgment was rendered in favor of appellee upon her second paragraph of answer and cross-complaint.

The errors relied upon for reversal and properly

assigned are: (1) Overruling of appellant's demurrer to second paragraph of answer; (2) overruling of appellant's demurrer to appellee's cross-complaint.

Since the demurrers to the second paragraph of answer and cross-complaint are alike, and raise the same questions, they will be treated together.

The complaint charges that the appellee was in possession of the premises and unlawfully kept the appellant out of same to his damage; that the appellant served a written demand for possession of said real estate upon the appellee more than three months before the expiration of the lease, but that the appellee refused to surrender possession thereof. At the time of bringing the action, there were several defendants, but the cause was dismissed as to all but the appellee.

The second paragraph of answer and the cross-complaint both set up that on the fourth day of September, 1926, one Philip Schuler leased to Leonard James the premises in question, for a filling and automobile service station, for a period of five years from September 1, 1926, a copy of the lease being attached to both pleadings; that the appellant became the owner of the premises by purchase subject to the leasehold rights of the lessee; that before the expiration of the lease, the lessee died and one Edith Welch became administratrix of his estate, and through appropriate proceedings in the Dearborn Circuit Court the rights of the lessee, Leonard James, under the lease, were legally transferred to appellee.

It will not be necessary to set out the entire lease as the controversy in this case all hinges upon the clause in the lease in which Schuler, the lessor, "in further consideration of such rental payments, now grants unto said James, *the first and prior right and option* to re-lease said premises for an additional term of five (5)

years from the expiration of this lease upon the same terms and conditions set forth and specified." (Our italics.)

The determination of this cause depends upon the proper construction of this clause in the lease. The appellee contends that this clause in the lease, giving to the lessee the first and prior right and option to re-lease said premises for an additional term of five years, gives to the lessee the absolute right to re-lease said premises for such additional term. The answer and cross-complaint both allege that the appellee served notice before the expiration of the lease that she intended to exercise this option.

The appellant contends that the words "first and prior" in the lease mean that the lessee was given the right to re-lease the premises *"ahead"* of others, provided the appellant did not want the land himself or had decided to re-lease said premises; so the meaning of the words *"first and prior"* in connection with the option is the decisive point in the case.

In the case of *Blythe et al., Receiver* v. *Gibbons* (1895), 141 Ind. 332, 344, 35 N. E. 557, the Supreme Court said:

"Whether we are considering an agreement between parties, a statute, a constitution, a judgment or order of court, with a view of its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the writing have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the writing, is the one which alone we are at liberty to say was the one intended to be conveyed. In such a case there is no room for construction. That which the words declare as the

meaning of the writing is the true one, and neither courts nor Legislatures have a right to add to or take away from that meaning."

Applying this principle of construction, we hold that the words *"first and prior"* mean that, if the lessor decides to re-lease the premises for a further term, the lessee shall have a first and prior option to re-lease the same. To give this language any other interpretation would do violence to the common rules of construction of written instruments. We can not say that the parties to this lease put the words "first and prior" into this lease intending that they mean nothing. If the lessor had intended to give the lessee the right at his option to re-lease said premises, he would have positively said so; and he would not have used the words "first and prior," for there would have been no necessity for such language. Ordinary usage of the English language would not permit any other interpretation. We are sustained in this view by the greater weight of authorities.

In the case of *Cloverdale Co.* v. *Bradford S. Littlefield et al.* (1921), 240 Mass. 129, 133 N. E. 565, the Massachusetts Supreme Court had under consideration a lease which contained this provision: "The party of the first part agrees to give the Cloverdale Company, party of the second part, the first right to re-lease for a term of three more years at the expiration of the present lease on the same conditions and terms as herein mentioned." In the construction of this clause, the court said:

"The ruling that 'the lessee was entitled to a renewal of the lease' was plainly right if the word 'first' does not qualify and make conditional the 'right to re-lease' given to the lessee by the covenant of the lessors. We are of opinion that the word 'first' cannot be rejected as surplusage in determining the meaning of the words 'first right to re-

lease' contained in the agreement if regard be given to the general rule that the intention of the parties to a written contract is to be ascertained upon a consideration of the several words, phrases and parts of the instrument, and of their effect upon it as a whole. So regarded, the phrase 'first right to re-lease' in common use plainly imports not an absolute and unqualified right in the lessee to have a re-lease at the expiration of the existing lease, but merely a preferential right to have a re-lease at the option of the lessee in the event the lessors then desired to lease the property and did not then desire to sell it or to occupy it themselves." (and cases cited.)

In the case of *Hill* v. *Prior* (1919), 79 New Hampshire 188, 106 Atl. 641, the court had under consideration a lease with the clause, the lessor agreed to give the lessee the "first right to a further lease." The court, in construing this clause, said:

". . . In the ordinary use of language the phrase 'the first right to a further lease,' fifteen years hence, would mean that the lessor would give the lessee the first opportunity of taking a further lease, if the lessor should at that time desire to lease the property; in other words, that he would not lease it to another party until he had given the lessee the first chance to take the lease. 'First' is used in the sense of giving the lessee the preference over others who might wish to become tenants of the property, but it does not indicate an absolute purpose on the part of the lessor to lease the property to anyone."

To like effect is a case in New York, *Walsh* v. *Ft. Schuyler Brewing Co. et al.* (1914), 83 Misc. Rep. 488, 146 N. Y. Supp. 160.

Appellee cites, and her counsel insisted in the oral argument and in the brief that the case of *C. Callahan Company* v. *Michael et al.* (1910), 45 Ind. App. 215, 90 N. E. 642, sustains the position for which appellee contends, and, to use appellee's expression, "is a case practically on all fours with the case at bar." In the Calla-

han case, the lease provided that at the termination of the lease, the lessee should have "the first refusal of said premises for another term of five years." The court said that this provision meant that lessee should have an option for re-renting the premises for five years longer at the same terms, but the facts in the Callahan case upon which the case was decided are not similar to those in the instant case. The court said, on page 220:

"Appellant C. Callahan Company was given the privilege of a further five years upon the same terms as those stipulated in the lease, except as to the amount of rent to be paid, which amount was to be fixed by the lessor. The five years expired, and said appellant remained in possession and paid rent for the first quarter according to the terms of the lease, which rent was accepted by the lessor, Day, and no new or other agreement was made. These facts, under the decisions in this state, show the extension of the lease for another term of five years, and the lessor by accepting said rent fixed the amount to be paid under the extension."

We think that, in the light of the facts upon which this case was decided, the court in mentioning the clause above quoted intended that the lessee should have an option for the renting of the premises for five years longer, provided the lessor decided to rent the same. The Callahan case was not decided upon the proposition stated by appellee, but upon the facts that the lessee held over and paid rent for another quarter, and that the lessor accepted the same. Because the Callahan case was decided by the court upon these facts, it is readily distinguishable from the instant case.

Appellee cites two cases in Pennsylvania which support her contention. As far as we have been able to find, these are the only authorities holding this view. The greater weight of authorities hold that a lease with a provision such as the one in this case does not give

to the lessee the absolute right to re-lease said premises unless the lessor decides to re-lease them. We have examined numerous other cases cited by appellee in her brief under this proposition, and found none of them in point except as herein stated. All of the Indiana cases cited, other than the Callahan case, do not go to a construction of a lease where the first or prior right was given to re-lease the premises.

There are some other questions raised in this case, but, from the conclusions we have reached under the facts set forth in the pleadings, this lease must be construed as not giving to appellee the absolute right to re-lease said premises; hence it will not be necessary to extend this opinion by discussion thereof.

We hold that the words "first and prior right and option to re-lease said premises" did not give to appellee the right to a further term, only in the event appellant desired to re-lease the premises, in which event appellee would have the first right and option if she so desired. Appellant having demanded possession before the expiration of the lease, appellee's tenancy expired at the termination thereof, and she could not hold under said option.

Judgment is reversed, and the lower court is instructed to vacate the judgment herein, and to sustain appellant's demurrers to the second paragraph of answer of appellee and also the cross-complaint, and for further proceedings not inconsistent with this opinion.