No. 34,636

THE LANDOWNERS COMPANY, *Appellee*, v. H. E. PENDRY and A. L. PENDRY, *Appellants*.

(100 P. 2d 632)

Opinion filed April 6, 1940.

*B. J. Lempenau* and *W. E. Atchison,* both of Topeka, for the appellants.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action under the forcible detainer statute for the possession of property in the business district of Topeka. From a judgment in favor of plaintiff defendants appeal.

On June 22, 1933, Dana MacVicar, owner, executed a lease covering the premises in question for a term of five years, beginning January 1, 1934, at a stipulated rental, to the defendants H. E. and A. L. Pendry.

The lease contained the following provision:

"The parties of the second part shall have the right to the first option in case they may desire to continue to occupy said premises under a new lease after the expiration of the present term, but shall give to the party of the first part a thirty-days notice in writing of their intention to exercise such option."

On December 2, 1936, MacVicar conveyed the premises to the plaintiff. On December 1, 1938, the defendants served on plaintiff a notice in writing of their intention to exercise the option specified in the lease, the written notice stating that the lessees "do hereby and forthwith exercise said option and acceptance of said lease for a continuance of said lease after the expiration of the first term of said lease."

Prior to the expiration of the lease, plaintiff served written notice on defendants that they would demand possession of the premises on and after January 1, 1939. On January 23, 1939, plaintiff served on defendants a written notice to vacate the premises on or before January 27, 1939, otherwise an action to eject defendants would be brought. Defendants refused to vacate the premises and the present action was instituted. The Court of Topeka, where the action was filed, gave judgment in favor of defendants. The plaintiff appealed to the district court. In the district court the defendants filed an answer, and a trial was had resulting in a judgment for plaintiff. The present appeal is from that judgment.

Counsel for defendants in their brief state that "the principal question involved in this appeal is whether the option provided for in the lease was sufficient to entitle the defendants to a renewal and to continue to occupy the property as tenants by giving the landlord the thirty-days notice of their desire to continue the same as provided therein."

In *Buddenberg v. Welch*, 97 Ind. App. 87, 185 N. E. 865, the court had under consideration a "first option" lease. It was there said:

"It will not be necessary to set out the entire lease, as the controversy in this case all hinges upon the clause in the lease in which Schuler, the lessor, 'in further consideration of such rental payments, now grants unto said James, *the first and prior right and option to* re-lease said premises for an additional term of five (5) years from the expiration of this lease upon the same terms and conditions set forth and specified.' (Our italics.)

"The determination of this cause depends upon the proper construction of this clause in the lease. The appellee contends that this clause in the lease, giving to the lessee the 'first and prior right and option to re-lease said premises for an additional term of five years, gives to the lessee the absolute right to re-lease said premises for such additional term. The answer and cross complaint both allege that the appellee served notice before the expiration of the lease that she intended to exercise this option.

"The appellant contends that the words 'first and prior' in the lease mean that the lessee was given the right to re-lease the premises *'ahead'* of others, provided the appellant did not want the land himself or had decided to re-lease said premises; so the meaning of the words *'first and prior'* in connection with the option is the decisive point in the case.

"In the case of *Blythe et al., Receiver, v. Gibbons* (1895), 141 Ind. 332, 344, 35 N. E. 557, the Supreme Court said:

" 'Whether we are considering an agreement between parties, a statute, a constitution, a judgment or order of court, with a view of its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the writing have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the writing, is the one which alone we are at liberty to say was the one intended to be conveyed. In such a case there is no room for construction. That which the words declare as the meaning of the writing is the true one, and neither courts nor legislatures have a right to add to or take away from that meaning.'

"Applying this principle of construction, we hold that the words *'first and prior'* mean that if the lessor decides to re-lease the premises for a further term, the lessee shall have a first and prior option to re-lease the same. To give this language any other interpretation would do violence to the common rules of construction of written instruments. We cannot say that the parties to this lease put the words 'first and prior' into this lease intending that they mean nothing. If the lessor had intended to give the lessee the right at his option to release said premises, he would have positively said so; and he would not have used the words 'first and prior,' for there would have been no necessity for such language. Ordinary usage of the English language would not permit any other interpretation. We are sustained in this view by the greater weight of authorities." (p. 88.)

In the case of *Cloverdale Co. v. Littlefield*, 240 Mass. 129, 133 N. E. 565, the Massachusetts Supreme Judicial Court had under consideration a lease which contained this provision: "The party of the first part agrees to give the Cloverdale Company, party of the second part, the first right to re-lease for a term of three more years at the expiration of the present lease on the same conditions and terms as herein mentioned." In the construction of this clause, the court said:

"The ruling that 'the lessee was entitled to a renewal of the lease' was plainly right if the word 'first' does not qualify and make conditional the 'right to release' given to the lessee by the covenant of the lessors. We are of opinion that the word 'first' cannot be rejected as surplusage in determining the meaning of the words 'first right to re-lease' contained in the agreement if regard be given to the general rule that the intention of parties to a written contract is to be ascertained upon a consideration of the several words, phrases and parts of the instrument, and of their effect upon it as a whole. So regarded, the phrase 'first right to re-lease' in common use plainly imports not an absolute and unqualified right in the lessee to have a re-lease at the expiration of the existing lease, but merely a preferential right to have a release at the option of the lessee in the event the lessors then desired to lease the property and did not then desire to sell it or to occupy it themselves." (And cases cited.) (p. 130.)

In *R. I. Realty Co. v. Terrell*, 254 N. Y. 121, 172 N. E. 262, the lease in question contained the following clause: "said party of the second part is given first privilege to buy said property for the sum of ($14,000) fourteen thousand dollars." The tenant notified the owner that it elected to exercise the option to purchase. The owner refused to convey, whereupon the tenant brought an action for damages suffered by the failure of the owner to convey. The court said:

"The contention of the appellant is that the clause is imperfect and incomplete and does not contain an absolute agreement to sell the premises to the lessee for $14,000 and that it only obligated the lessor to convey to the lessee in case he wished to sell to another during the term of the lease for $14,000, in which event he was bound to give the lessee the 'first privilege to buy' the premises for the price specified.

"The respondent's position is that the legal effect of the words is to give the lessee an absolute right to purchase the premises at the price named. If that position is correct, the lessor was deprived of the right to determine whether or not he wished to sell.

"The use of the words 'first privilege' indicates that the parties must have had in mind some other opportunity of the lessor to sell and that the lessor was not prevented from selling to another if he desired. It bound the lessor, however, not to sell to another for that price without first giving the lessee the

opportunity or privilege to purchase the property at the price specified, and, if the lessee did not exercise the privilege to purchase, the lessor was free to sell to any one else. The words 'first privilege' did not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depended upon the lessor's desire to sell. If the lessor desired to sell at the price named, then the lessee was to have the 'first privilege to buy' at the figure specified.

"In construing the clause in question the court is required to give some meaning to all the words used. To construe the clause in accordance with the contention of the respondent would require that the word 'first' be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. (*Sandberg v. Reilly,* 223 App. Div. 57 [227 N. Y. S. 418]; affd., 250 N. Y. 547 [166 N. E. 319.]) Therefore, it must have been used to prevent the agreement from constituting an absolute option to sell. The phrase 'first privilege to buy' and the words 'privilege to buy' have an entirely different meaning; one is conditional and the other absolute. This court has decided in actions for specific performance that agreements substantially like the one in question could not be enforced in an action in equity. (*Buckmaster v. Thompson,* 36 N. Y. 558; *Burbach v. Sinram,* 237 N. Y. 600 [143 N. E. 759.]) The same conclusion has been announced by other courts of the state. (*Sargent v. Vought,* 194 App. Div. 807 [185 N. Y. S. 578]; *Koppi v. Gallagher,* 133 Misc. Rep. 79 [230 N. Y. S. 680]; affd., 223 App. Div. 713 [227 N. Y. S. 836]; *Holloway v. Schmidt,* 33 Misc. Rep. 747 [67 N. Y. S. 169].)" (p. 124.)

In *Sander v. Schwab,* 315 Ill. 623, 146 N. E. 509, a first option agreement was held to be too indefinite to be specifically enforced.

In the case before us the "first option" clause did not deprive the lessor of the right to sell the property, the right to occupy it, the right to remodel the property or to tear it down if he chose to do so. The lessor was bound, however, not to lease the property to another without giving the lessees the opportunity or privilege to lease the property upon the terms specified. The right of the lessees to lease the property for a new term depended on the lessors' desire to make a new lease. Any other construction would deprive the owner of the right to determine whether he wanted to make other use of the property.

We have considered other questions argued in defendants' brief, but do not think they call for extended comment. Finding no error in the record, the judgment must be affirmed. It is so ordered.