## SCHALLERER v. BAUMGARTNER.
### No. 3770.

District Court of Alaska. Third Division. Anchorage.
Jan. 21, 1947.

Ziegler & King, of Ketchikan, and Davis & Renfrew, of Anchorage, for plaintiff.

R. E. Baumgartner, of Seward, for defendant.

DIMOND, District Judge.

This case involves the construction of a lease covering a part of Lot 15 in Clock 10 of the Townsite of Seward, Alaska, and of the building thereon. The case was submitted upon an agreed statement of facts supplemented by oral testimony, and was tried by the Court without a jury. The case was argued orally, and pursuant to stipulation of counsel briefs were submitted incorporating therein copies of correspondence between the parties and this correspondence, under the terms of the stipulation, has been considered as evidence.

The lease was entered into on July 1, 1937 between Edith Schallerer, lessor, and the defendant, as lessee. The lessor later conveyed the property to her husband, Otto Schallerer, who brought this action. The term of the lease was seven years commencing on July 1, 1937, and the stipulated rental was $25.00 per month. It was agreed that the lessee should make all necessary or desirable alterations or improvements at his own expense, and that all improvements should remain on the property and constitute a part thereof.

Now we come to the paragraph of the lease out of which this action arose. It reads as follows: "The lessor hereby agrees to give the lessee the first right to release for a term of seven more years at the expiration of the present lease, upon the same terms and conditions herein contained; and in the event of the contemplated sale of the said premises during the demised term, or any extension thereof, the lessor agrees to give the lessee notice in writing at least twenty days before the contemplated sale, of the substance of the terms on which it is proposed to be made, and the lessee shall have the right to purchase the said premises upon the terms and conditions so proposed."

The defendant spent considerable sums in the repair and improvement of the leased building, supplied furniture, and at the time of the trial was receiving $50.00 per month as rental for the second story rooms. The option for release for the additional term was not and is not uncon-

scionable in view of the expenditures so undertaken by the defendant to make and keep the building habitable and usable, and the circumstances referred to in the correspondence, existing in 1937 and since accentuated, which seriously threaten all property values in the city.

From all of the evidence, it seems clear beyond dispute that at the expiration of the first seven year term, namely on July 1, 1944, the plaintiff did not desire to occupy the property himself, and had no intention of selling it, but he did desire to release it to the defendant at an increased rental without regard to the stipulation in the lease above quoted wherein the defendant was accorded the "first right" to release for a term of seven more years after July 1, 1944, "upon the same terms and conditions" contained in the lease as to the first seven year period. The plaintiff's purpose and intent are clearly revealed in letter dated August 5, 1944, written to the defendant by the plaintiff's attorney which reads as follows:

"Mrs. Edith Schallerer has this day requested us to inform you that she does not wish to release the quarters occupied by you under your lease with her dated July 1, 1937, which expired by its terms on June 30, 1944.

"She is willing, however, for you to rent said premises from her on a month to month basis, at a rental to be agreed upon by the parties.

"Will you kindly acknowledge receipt hereof and advise us whether you desire to rent said premises from her on said basis; and if not, when it will be possible for you to vacate said premises and return it to the owner."

Such purpose and intent are reiterated, and emphasized by the following quoted testimony of Mrs. Margaret Lechner, a sister of Mrs. Schallerer, who executed the lease under power of attorney given by Mrs. Schallerer to Mrs. Lechner:

"Q. Was there a suit pending in 1944? A. I am not so sure when this suit started, Mr. Baumgartner, but I do know that you and I talked about this matter of raising the

rent. It was not the question of getting you out of the building, but it was the question of getting a fair rental for the building. I do know that my sister did not care to have anyone else in there—that wasn't it at all. That's why I never considered any other. I have had several requests to rent the building, even from local men in town, but I did not consider it because you were in it and that was perfectly satisfactory."

Nothing given otherwise in evidence either by the testimony of witnesses at the trial or in the correspondence between the parties in any manner disputes the conclusion to be drawn from the letter and the testimony above quoted.

While counsel have presented learnedly and exhaustively their respective views, based upon both reason and authority, concerning the interpretation to be given to the word "first" in such cases, the uncontradicted facts of this case show not only beyond all reasonable doubt, but beyond all doubt, that at the expiration of the original term of seven years the lessor had no thought of selling the premises or of occupying it himself, but insisted only that, despite the option contained in the lease giving to the lessee the right to release for another term of seven years, the lessee must pay additional rentals and the original lease be declared terminated and of no further effect. That contention of the lessor would nullify entirely the right to release for the additional term of seven years just the same as if those words had never been included in the lease in the first instance.

█ It is to be noted further that the lease contains the provision not only for release for an additional seven year period, but that the lessee should have the right to purchase at the highest price which the lessor could obtain for the property if the lessor desired to sell it. The two provisions taken together make an understandable, reasonable and harmonious whole. Necessarily, if the lessor desired to sell he would be obliged to give the lessee the right to purchase at the upset price, and if he desired to lease, the lessee

had the option for an additional seven years on the same terms. Therefore, whether the construction relied upon by the plaintiff as expressed in the cases of Cloverdale Co. v. Littlefield, 1921, 240 Mass. 129, 133 N.E. 565; Buddenberg v. Welch, 1933, 97 Ind.App. 87, 185 N.E. 865; Hill v. Prior, 1919, 79 N.H. 188, 106 A. 641, and Landowners Co. v. Pendry, 1940, 151 Kan. 674, 100 P.2d 632, 127 A. L.R. 890, wherein the word "first" or its equivalent has been held to mean that the exercise of the option to release or renew must be based upon the purpose of the landlord to lease the property and not to sell it or occupy it himself, or the cases, largely confined to Pennsylvania, more favorable to the lessee, as illustrated in Stetler v. North Branch Transit Co. et al., 1917, 258 Pa. 299, 101 A. 980, and in Kaufmann v. Liggett, 1904, 209 Pa. 87, 58 A. 129, 67 L.R. A. 353, 103 Am.St.Rep. 988, holding in effect that the word "first" does not limit an option given for renewal or extension or release, the result here is the same.

The action must be dismissed. Findings and judgment may be prepared accordingly.