204 P.2d 785

**CRECENTE v. VERNIER.**
No. 5160.

Supreme Court of New Mexico.
March 25, 1949.

Sam Dazzo, of Albuquerque, for appellant.

Hannett & Hannett, of Albuquerque, for appellee.

BRICE, Chief Justice.

This action was brought by appellee to enforce the specific performance of that portion of a purported contract containing, as it is alleged, an option to purchase certain real estate, which he claimed the right to exercise. From an adverse judgment the defendant has appealed to this court.

The court's decision is as follows:

"Findings of Fact

"(1) That both plaintiff and defendant are residents of the County of Sandoval, State of New Mexico

"(2) On the 3rd day of November, 1945, plaintiff and defendant entered into an agreement in writing in words and figures as follows:

"'Sandoval County, New Mexico

"'November 3rd, 1945

"'To Whom It May Concern:

"'This agreement entered into by and between Jesus Rios Crecente and Margaret Vernier is for the purpose of binding the two principal parties to the following: Mrs. Margaret Vernier party of the first part agrees to lease to Jesus Rios Crecente her house and land for one year, the price of rent on this lease to be: One hundred and twenty dollars ($120.00) per year. Mr. Crecente agrees to come to Mrs. Vernier on or before the 15th of November, 1945 to give her $60.00 in advance or six months rent and later when the six months are up to pay rent at the rate of $10.00 per month. Mrs. Vernier also agrees to give Mr. Crecente first privilege of purchasing her property if later he decides to purchase same. Mrs. Vernier has set a price of $3000.00 as a sale price, also Mrs. Vernier gives Mr. Crecente a term of 2 years to continue renting or purchasing at above price. Also if Mr. Crecente erects or builds chicken houses or fences for same and decides he does not wish to purchase land from Mrs. Vernier he has a right to remove any fences or chicken houses he may set up or build at his own expense.

"'(signed)   Mrs. Margaret Vernier
"            Jesus Rios Crecente

"'Witnesses:

"'(signed)   Emilia Frank
"            Tommie Valdez

"'Subscribed and sworn to before me this 13-day of November, 1945.
"'(Signed)   Alfredo Valdez
"'(Seal)                Notary Public
"'My commission expires July 29—1949.'

"(3) That thereafter plaintiff entered into the possession of said land under said lease and paid the rentals in said contract provided up to and until the 3rd day of November, 1947.

"(4) That on the 10th day of October, 1947 plaintiff advised defendant that he had decided to exercise his option to purchase.

"(5) That the defendant refused to sell or deliver a deed of conveyance to said property to the plaintiff.

"(6) That the property, possession of which was delivered to plaintiff by the defendant under said lease contract, consists of 6.85 acres of land, more or less, in the Middle Rio Grande Conservancy District, and 7.40 acres of land, more or less, of mesa land, all of said land being located in

Sandoval County, New Mexico, and being more particularly described as follows: (description of land)

"(7) That the defendant, Margaret Vernier, and her late husband purchased and acquired said land as community property, and that before the execution and delivery of said contract, the defendant's husband had departed this life, leaving surviving him two daughters and the defendant, Margaret Vernier.

"(8) That the deceased husband of the defendant died intestate on February 19, 1929.

"(9) That at the time of the execution of said contract, November 3, 1945, defendant was the owner of an undivided five-eighths interest in said described land.

"(10) That by the terms of paragraph 7 of plaintiff's complaint: 'Plaintiff tenders the purchase price of $3,000.00 and is ready, willing, and able to pay the same over to the defendant or into court upon order of the court.'

"(11) That the defendant refused said tender.

"(12) That the defendant, after the execution and delivery of the lease contract dated November 3, 1945, by the receipts for rent received by her from the plaintiff and signed by her, and by the letter written for her by her daughter, addressed to Gilberto Espinosa, Esquire, and signed by her, recognized the said lease and contract as an option to purchase.

"As Conclusions of Law the Court finds:

"(1) That the Court has jurisdiction over the parties and subject matter of this action.

"(2) That the contract annexed to plaintiff's complaint and marked 'Exhibit A' contains an option to purchase, and that the plaintiff has performed all the obligations under said contract encumbent upon him to perform, and upon payment into this Court of five-eighths of the purchase price of $3,000.00, to-wit: the sum of $1,875.00, plaintiff is entitled to a conveyance of all defendant's right, title and interest in and to that certain tract of land in Sandoval County, New Mexico now occupied by the plaintiff, comprising a total of 14.25 acres; 6.85, more or less, of which is in the Middle Rio Grande Conservancy District, and 7.40 more or less, of which is mesa land, said tract of land being more particularly described as follows: (description of land).

"(3) That the tender set forth in paragraph 7 of the plaintiff's complaint was a valid, unconditional tender of the purchase price of $3,000.00.

"(4) That the plaintiff is entitled to judgment and a decree of specific performance requiring and ordering the defendant, Margaret Vernier, to make execute and deliver to the plaintiff a warranty deed

conveying her undivided five-eighths interest in said land to the plaintiff upon the plaintiff's paying into the Clerk of this Court for the use and benefit of the defendant the sum of $1,875.00."

Thereafter the trial court entered a judgment requiring the defendant to specifically perform the contract by executing and delivering to the plaintiff a warranty deed conveying all of her right, title and interest in the land in suit (which it was adjudged was a five-eighths undivided interest), upon the payment to her by the plaintiff of the sum of $1,875.

The question depends on the meaning of that portion of the contract in suit in the following language:

"Mrs. Vernier also agrees to give Mr. Crecente first privilege of purchasing her property if later he decides to purchase same, Mrs. Vernier has set a price of $3000 as a sale price; Mrs. Vernier also agrees to give Mr. Crecente a term of two years to continue renting or purchasing at above price."

█ We construe the first sentence quoted as though it had been written as follows:

"If Mrs. Vernier should desire to sell her property, she agrees to give Mr. Crecente the first privilege of purchasing it, if later he desires to purchase it."

The following cases support this holding:

In Sander v. Schwab, 315 Ill. 623, 146 N.E. 509, the contract construed provided:

"It is understood and agreed that the party of the second part shall, in case of a bona fide sale of said premises, have a first option to purchase during the life of this lease at a price of $13,500. * * *"

The court said:

"The lease gives appellant, in case of a bona fide sale of the demised property, a first option to purchase it during the term at a price fixed or ascertainable. By the provision appellant's right to purchase is not absolute, but is conditioned upon an actual sale of the property. No duty or obligation to sell is imposed upon appellee. A mere desire or intention on his part to sell, or an oral request by him upon the appellant to purchase, is not equivalent to a sale. There is no allegation in the bill that appellee made a sale of the property. Hence the condition which would give appellant the right to purchase has not happened. Moreover, the option did not, apart from the price, specify the terms and conditions of sale, and is too indefinite to be specifically enforced."

In Berven v. Miller, Cal.App., 194 P.2d 80, the contract provided:

"In consideration of tenant furnishing material and doing repairs, also work necessary to decorating the premises, the landlord agrees that in event of a sale of prop-

erty, the tenant shall have the first chance to buy property at the offer made for same. * * * "

The court said:

"It is evident from a reading of the purported agreement between the parties that it falls within the rule just stated. The document signed by Mrs. Miller was at best a mere option which plaintiff under certain conditions could accept or reject. The terms of payment, the times of payment, the property to be sold, are each so indefinite and uncertain that a court could not decree specific performance of the agreement."

In Cloverdale Co. v. Littlefield, 240 Mass. 129, 133 N.E. 565, the lease contract construed, provided:

"The party of the first part agreed to give the Cloverdale Company, party of the second part, the first right to re-lease for a term of three more years at the expiration of the present lease on the same conditions and terms as herein mentioned."

The defendant refused to re-lease the premises to the plaintiff. The court said:

"The ruling that 'the lessee was entitled to a renewal of the lease' was plainly right if the word 'first' does not qualify and make conditional the 'right to re-lease' given to the lessee by the covenant of the lessors. We are of opinion that the word 'first' cannot be rejected as surplusage in determining the meaning of the words 'first right to re-lease' contained in the agreement if regard be given to the general rule that the intention of parties to a written contract is to be ascertained upon a consideration of the several words, phrases and parts of the instrument, and of their effect upon it as a whole. So regarded the phrase 'first right to re-lease' in common use plainly imports not an absolute and unqualified right in the lessee to have a re-lease at the expiration of the existing lease, but merely a preferential right to have a re-lease at the option of the lessee in the event the lessors then desired to lease the property and did not then desire to sell it or to occupy it themselves."

In Reed v. Campbell, 43 N.J.Eq. 406, 4 A. 433, the lease involved contained this clause:

"And it is further agreed that, at the expiration of this lease, the said Reed shall have the first right to lease the said premises for the next succeeding year or years."

The court said:

"Certainly there is nothing in all this to sustain the allegation that there was an express agreement to renew the existing lease. What can the court do in such case, supposing the injunction stands till final hearing? How is it possible for the court to aid the complainant without the risk of doing the greatest injustice? It was not agreed that the former lease should be

continued; but only the first right to a lease. What shall be the terms of that lease? Has this court the right to fix the amount of the rent, the times when the rent shall be due, the length of the term, and the obligations of either party to the other respecting repairs, underletting, and other methods of use or enjoyment?"

In Buddenberg v. Welch, 97 Ind.App. 87, 185 N.E. 865, the lease contained the following:

"In further consideration of such rental payments (the lease) now grants unto said James, the first and prior right and option to re-lease said premises for an additional term of five (5) years * * * upon the same terms and conditions set forth and specified."

The court stated:

"The appellant contends that the words 'first and prior' in the lease mean that the lessee was given the right to re-lease the premises 'ahead' of others, provided the appellant did not want the land himself or had decided to re-lease said premises, so the meaning of the words 'first and prior' in connection with the option is the decisive point in the case. * * *

"Applying this principle of construction, we hold that the words 'first and prior' mean that if the lessor decides to re-lease the premises for a further term, the lessee shall have a first and prior option to re-lease the same. To give this language any other interpretation would do violence to the common rules of construction of written instruments. We cannot say that the parties to this lease put the words 'first and prior' into this lease intending that they mean nothing. If the lessor had intended to give the lessee the right at his option to re-lease said premises, he would have positively said so; and he would not have used the words 'first and prior,' for there would have been no necessity for such language. Ordinary usage of the English language would not permit any other interpretation. We are sustained in this view by the greater weight of authorities."

In the case of Hill v. Prior, 79 N.H. 188, 106 A. 641, the court had under consideration a lease with the clause, the lessor agreed to give the lessee the "first right to a further lease." The court, in construing this clause, said:

"* * * In the ordinary use of language the phrase 'the first right to a further lease' 15 years hence would mean that the lessor would give the lessee the first opportunity of taking a further lease, if the lessor should at that time desire to lease the property; in other words, that he would not lease it to another party until he had given the lessee the first chance to take the lease. 'First' is used in the sense of giving the lessee the preference over others who might wish to become tenants

of the property, but it does not indicate an absolute purpose on the part of the lessor to lease the property to any one."

To like effect is a case in New York, Walsh v. Ft. Schuyler Brewing Co., et al, 83 Misc. 488, 146 N.Y.S. 160.

In Landowners Co. v. Pendry, 151 Kan. 674, 100 P.2d 632, 633, 127 A.L.R. 890, the following provision in a lease was construed:

"The parties of the second part shall have the right to the first option in case they may desire to continue to occupy said premises under a new lease after the expiration of the present term, but shall give to the party of the first part a thirty days notice in writing of their intention to exercise such option."

The lessee attempted to exercise an option to re-lease the property. After citing and quoting from cases, the Kansas court said:

"In the case before us the 'first option' clause did not deprive the lessor of the right to sell the property, the right to occupy it, the right to remodel the property or to tear it down if he chose to do so. The lessor was bound, however, not to lease the property to another without giving the lessees the opportunity or privilege to lease the property upon the terms specified. The right of the lessees to lease the property for a new term depended on the lessor's desire to make a new lease. Any other construction would deprive the owner of the right to determine whether he wanted to make other use of the property."

In R. I. Realty Co. v. Terrell, 254 N.Y. 121, 172 N.E. 262, the following provision in a lease was construed:

"Said party of the second part is given first privilege to buy said property for the sum of ($14,000.00) fourteen thousand dollars."

The lessee notified lessor that he had elected to exercise the option. The lessor declined to sell. In holding that the plaintiff (lessee) could not enforce specific performance, the New York court said:

"The use of the words 'first privilege' indicates that the parties must have had in mind some other opportunity of the lessor to sell and that the lessor was not prevented from selling to another if he desired. It bound the lessor, however, not to sell to another for that price without first giving the lessee the opportunity or privilege to purchase the property at the price specified, and, if the lessee did not exercise the privilege to purchase, the lessor was free to sell to any one else. The words 'first privilege' did not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depended upon the lessor's desire to sell. If the lessor desired to sell at the price named, then

the lessee was to have the 'first privilege to buy' at the figure specified.

"In construing the clause in question, the court is required to give some meaning to all the words used. To construe the clause in accordance with the contention of the respondent would require that the word 'first' be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. Sandberg v. Reilly, 223 App. Div. 57, 227 N.Y.S. 418, affirmed 250 N.Y. 547, 166 N.E. 319. Therefore, it must have been used to prevent the agreement from constituting an absolute option to sell. The phrase 'first privilege to buy' and the words 'privilege to buy' have an entirely different meaning; one is conditional and the other absolute."

And see annotations in 127 A.L.R. 894.

The plaintiff suggests that the contract may be divided into two parts, the first ending with the words "if later he decides to purchase same." And the second division is the remainder of the contract. He states:

"If the sentence: 'Mrs. Vernier also agrees to give Mr. Crecente first privilege of purchasing her property if later he decides to purchase same,' is eliminated from the contract there is no ambiguity, and clearly appellee has a plain and unequivocal contract of purchase any time within two years and the right to continue renting or purchasing during that period."

■ We are unable to agree to this. It is true the contract may be divided into two parts, but the first part has reference alone to the lease for one year, and ends with the words "at the rate of $10 per month." The remainder of the contract has reference to the contingent right to purchase the property, or re-lease it for another two years.

■ We are not permitted to eliminate from the contract conditionally authorizing a purchase, any of the words used. This lease was written by the plaintiff's wife, a very intelligent person, acting for him. They were dealing with an old lady in her late seventies. It will be assumed by us that the plaintiff intended to use all the language that he did use in preparing this lease, including that part giving him "the first privilege" to buy the property.

■ If construction is necessary under the circumstances, it will not be favorable to the lessee who prepared the lease.

"(d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law." Sec. 236, Restatement Law of Contracts.

"Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom

he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter; and as he will ordinarily be the promisee of the promise in question, it is sometimes stated that the contract, if ambiguous, will be interpreted in favor of the promisee. * * *" Williston on Contracts, Sec. 621.

The first sentence of the language to be construed grants a conditional privilege to the plaintiff to buy the property. It is followed by the price to be paid and then by "also, Mrs. Vernier gives Mr. Crecente a term of two years to continue renting or *purchasing* at above price." This language standing alone might constitute an absolute option, but as we construe the language it merely fixed the time the conditional option would run.

There is a general rule to the effect that where two clauses in a contract are so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected. It has been said that this rule is one to apply as a last resort. Hammond v. Hammond, 159 Md. 563, 152 A. 107, 84 A.L.R. 1050, and we would apply it here only under such contingency.

Another rule of construction, known as Lord Tenderden's Rule, is that where particular words of description are followed by general terms the latter will be regarded as referring to things of like class. Swift & Co. v. Columbia R. G. & E. Co., 4 Cir., 17 F.2d 42, 51 A.L.R. 983. While the rule does not exactly apply here, we are of the opinion that the general word "purchasing" following the specific provision limiting the right to purchase to a conditional right, should be construed as referring to the conditional right to purchase first given, and so limited. The word "purchasing" refers back to the conditional right to purchase first given plaintiff.

It is asserted by plaintiff that the defendant had construed the contract to be an absolute option and that the court so held in his finding No. 12. We are inclined to disagree with the trial court's finding No. 12 and are of the opinion that it should be stricken. It seems that the plaintiff would write out receipts for rent in which the lease in question was called a "lease-option" and present for Mrs. Vernier's signature. She signed several of these receipts. A typical one reads as follows:

"Received of J. R. Crecente the sum of Ten Dollars which pays rent on my house and property as per contract-option * * *."

This receipt was prepared by the plaintiff and his use of the words "contract-option" was merely his description of the contract. We see no reason why Mrs. Vernier should be held to have bound herself as to the

nature of the contract, as that was not involved. It is also asserted that the following letter, written by the defendant's daughter for the defendant, to the plaintiff's attorney, was such a construction of the contract:

"In reply to your letters of July 9 and July 23 in reference to the option with Mr. Crecente to rent or purchase my land and house I am complying with the contract as far as one year, when they complete the year they can get out of my home, I do not want to rent for so small amount, they pay me $10.00 per month and it is not enough.

"Mr. Espinosa, I must tell you my two daughters have their share in this land too and they do not want to sell nor they do not want me to sell. The reason they have land here too is that my husband did not leave a will when he died and I have been informed they too must share in the land."

The contention is that the word "option" in this letter indicates that the defendant understood that a general option was given to purchase. The word "option" is not necessarily confined to an absolute binding option to purchase. There was a conditional option given and it was therefore an option contract, but this does not mean that the option was unlimited. The fact that she gave notice that she would not sell her land, indicates that she did not consider the option absolutely binding on her.

We are of the opinion that the plaintiff has only a preference right to purchase the defendant's property during the two years, if, and only if, defendant should desire to sell it. If she does, she must give the plaintiff "the preference right" to buy at the price of $3000.00.

The judgment of the district court is reversed and cause remanded with instructions to the district court to set aside its decree, and enter judgment for defendant.

It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.