June Lynne (Bruner) ABNER,
Plaintiff-Appellant,

v.

Clayton Lee BRUNER,
Defendant-Appellee.

No. 1–181A22.

Court of Appeals of Indiana,
First District.

Sept. 22, 1981.

Ted R. Todd, Todd, Walro & Collins, Madison, for plaintiff-appellant.

Curtis M. Jacobs, Cooper, Cox, Jacobs & Reed, Madison, for defendant-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

June Lynne (Bruner) Abner appeals the judgment entered in the Jefferson Circuit Court granting Clayton Lee Bruner's motion for relief from the support order contained in the decree of dissolution.

## STATEMENT OF THE FACTS

June and Clayton were divorced in July of 1966. The decree of dissolution provided:

> "It is further considered ordered and adjudged by the Court that the plaintiff [June] be awarded the custody of the three minor children of the parties hereto namely: Christopher Lee Bruner, born July 2, 1957, Mark Allen Bruner, born May 2, 1960 and William Robert Bruner, born December 6, 1964. *And the defendant [Clayton] shall pay to the Clerk of this Court the sum of $45.00 per week for the support and maintenance of said children beginning Saturday, July 9, 1966 and continuing until further order of this Court* which said sums when received by the Clerk shall be disbursed by her to the plaintiff and used by the plaintiff for the support and maintenance of said children. (Emphasis added.)"

On September 23, 1969, June filed a petition to modify, stipulating the parties had agreed to reduce the support payment to $35 per week, albeit without court approval. Oddly, the petition requested a modification of the support order to $45 a week. The record contains no judgment or order on the petition.

On May 31, 1972, June filed a petition for an order to show cause and a determination

of arrearages in the amount of $4,405. The judgment entry, dated November 30, 1972, read as follows:

"Parties appear in person and by counsel and it is stipulated that the defendant is in arrears payment of support on the original order herein in the sum of $4,590.00.

It is further stipulated that the defendant reduced his support payments to $35.00 each week with the acquiesence of the plaintiff; that the defendant is not in contempt of this Court, but that he is indebted to the plaintiff in said sum of $4,590.00; that plaintiff is entitled to her attorney fees in bringing this citation.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant is in arrears in payment of support herein in the payment of the sum of $4,590.00; that the defendant pay as attorney fees the plaintiff's attorney the sum of $100.00 to the Clerk of this court within thirty days and Clerk to pay the same to the attorney for the plaintiff; that defendant be released from citation herein *on condition he make a regular support payment of $45.00 each week when the same becomes due.* Defendant to pay costs. (Emphasis added.)"

No appeal was taken from this judgment.

On March 18, 1980, June filed a petition wherein she requested the November 30 determination of arrearages in the amount of $4,590 be reduced to judgment and a second judgment for arrearages accrued as of February 29, 1980, in the amount of $5,225, apparently based upon either the original or the November 30 order.

On April 17, 1980, Clayton filed his answer to June's petition and a "Motion for Relief from Divorce Order," Ind. Rules of Procedure, Trial Rule 60(B), in which he asserted the original decree, ordering child support of $45 per week, should be "interpreted" to be an order for $15 per week per child. He further stated:

" * * * *

3. That if the Divorce Decree is to be *interpreted as a lump sum amount* without specific amounts allocable to each child, *then the drafting was a mistake, and equity requires that the Court reform the Decree* to provide for support in the amount of $15 per week per child, as this was the intention of the parties and the Court." (Emphasis added.)

At the hearing on the matter Clayton testified he had reduced his support payments from $195 to $130 per month in July of 1975 upon the emancipation of the eldest child and from $130 to $65 in May of 1980 upon the emancipation of the middle child. He further testified it was his understanding the original support order provided for payments of $15 per week per child. Clayton called Harold Ford, attorney at law, to the stand. Ford had been June's attorney in the original action in dissolution. He testified the parties had negotiated $15 per week per child, but the common practice at the time was to lump such payments together.

On June 10, 1980, the trial court entered the following judgment:

"The Court makes the following findings of facts:

1. That the original Divorce Decree of the parties ordered the defendant to pay the sum of $45 per week for the support and maintenance of the three minor children of the parties.

2. That on November 30, 1972, Special Judge William M. Lienberger found the defendant to be in arrears in the payment of support in the amount of $4,590.

3. That after November 30, 1972, the defendant paid the support as ordered until the oldest of the parties' three children was emancipated, at which time the defendant reduced his payments by $15 per week, and said payments were further reduced by the defendant by $15 per week upon the emancipation of the second child of the parties. The defendant continues to pay the sum of $15 per week on the one unemancipated child of the parties.

4. It was the custom and practice in the Jefferson Circuit Court at the time the divorce of the parties was granted, in cases where support for the children of

the marriage was equal, to total the support payments for the individual children rather than to set forth in the order a specific amount per child, even though that was the intention of the parties and the Court.

5. In the case at bar, the parties, through their respective attorneys, negotiated a settlement of the defendant's support obligation on the basis of $15 per week per child.

6. That the defendant's Motion for Relief from Divorce Order should be granted.

7. That the plaintiff is entitled to a judgment against the defendant in the amount of $4,590.

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT, that the Motion for Relief from Divorce Order be and the same is now and hereby granted.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT, that the plaintiff have and she is hereby awarded a judgment for unpaid support against the defendant in the amount of $4,590."

## ISSUES

June states the issues as follows:

I. "Is a Motion for Relief from Divorce Order barred by laches and Trial Rule 60(B) if filed eight (8) years after filing the order?"

II. "May a Court act retroactively to alter a divorce decree?"

III. "May the Court accept extrinsic evidence as to the meaning of a support order fully and clearly embodied in a decree?"

IV. "Where an order provides for an undivided support payment, may that payment be unilaterally reduced proportionally by the paying party upon the emancipation of one or more children without Court authorization?"

## DISCUSSION AND DECISION

The arguments of the parties on appeal are as follows: Ind.Code 31–1–11.5–17 (Supp.1980) allows a court to modify or revoke the provisions of an order with respect to child support upon motion and a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. However, as June argues under her second issue, it is settled the relief afforded by Ind.Code 31–1–11.5–17(a) may only be prospective. *Jahn v. Jahn*, (1979) Ind.App., 385 N.E.2d 488; *Haycraft v. Haycraft*, (1978) Ind.App., 375 N.E.2d 252; *Kniffen v. Courtney*, (1971) 148 Ind. App. 358, 266 N.E.2d 72. Clayton does not dispute the law, but counters he neither requested nor received a retroactive modification. He asserts the trial court merely "interpreted and corrected" its judgment upon a T.R. 60(B) motion as in *Lakenau v. Lakenau*, (1977) Ind.App., 365 N.E.2d 1241.

Ind.Code 31–1–11.5–17(b) states that unless otherwise provided in the order, provisions for a child's support are terminated upon the emancipation of the child. However, as June argues under her fourth issue, it is the law that the emancipation of fewer than all of the children supported by an order in gross does not automatically reduce the supporting parent's obligation. *Ross v. Ross*, (1979) Ind.App., 397 N.E.2d 1066. Clayton again does not dispute the law, but counters he did not ask the court to sanction a unilateral reduction of an undivided support order. He asserts the trial court simply interpreted the order as "originally establishing a specific amount per child," and therefore permitted the automatic termination of support upon emancipation pursuant to Ind.Code 31–1–11.5–17(b).

Under her first issue June asserts Clayton's motion for relief from judgment was not timely filed. She argues Clayton filed his motion under T.R. 60(B)(1), alleging mistake, more than one year after the order was entered. Assuming *arguendo* Clayton's motion was filed under T.R. 60(B)(8), June argues it was not filed within a reasonable time, citing *Toller v. Toller*, (1978) Ind.App., 375 N.E.2d 263. Clayton admits the motion mentions mistake, which speaks to T.R.

60(B)(1), but asserts the discussion regarding the practice of totalling support payments and the interpretation of the decree is directed to T.R. 60(B)(8). Clayton then argues the petition was filed within a reasonable time after June filed her petition and gave notice of a misunderstanding. Clayton emphasizes the fact that June's petition followed on the heels of *Ross, supra.* Finally, he argues June waived the timeliness issue by failing to raise it in the trial court, citing *Bennett v. Bennett,* (1977) 172 Ind.App. 581, 361 N.E.2d 193.

In presenting her third issue, June asserts the language of the order is plain and unequivocal and therefore the trial court erred in admitting testimony as to any understanding between the parties or any custom and usage of the court which might indicate another meaning. She cites I.L.E. *Judgment* § 323 (1959) for the proposition that the operation and effect of a judgment are purely matters of law and are not affected by an understanding of the parties. Clayton asserts extrinsic evidence may be used to interpret a judgment, citing T.R. 60(B) and *Wilson v. Wilson,* (1976) 169 Ind.App. 530, 349 N.E.2d 277.

■ We observe in the case before us a number of procedural irregularities,[1] but we will address only the error we deem critical: the "interpretation" of an unequivocal, undivided support order. It is important to note that although the trial court expressly granted Clayton's motion, the trial court did not retro- or prospectively modify the terms, i. e., the wording, of the original order. Rather, the trial court interpreted the order so as to permit the partial, or per child, termination of its provisions upon emancipation. The trial court avoided the problem of reducing or vacating Clayton's indebtedness to June for accrued support by simply interpreting the order in such a manner that certain amounts of support did not accrue.

The decree of dissolution awarded June custody of Christopher, Mark, and William, and ordered Clayton to pay "$45.00 per week for the support and maintenance of said children beginning [immediately] and continuing until further order of this Court." We understand Clayton's argument to be that the order may properly be interpreted to obligate him to pay "$15 per week for the support and maintenance of each of said children." Of course, the application of statutory and case law to the alternative wording would work to his benefit. In *Blythe v. Gibbons,* (1893) 141 Ind. 332, 344, 35 N.E. 557, 561, our Supreme Court stated:

> "Whether we are considering an agreement between parties, a statute, a constitution, a judgment or order of court, with a view of its interpretation, the thing we are to seek is the thought of which it expresses. To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the writing have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the writing, is the one which alone we are at liberty to say was the one intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the writing is the true one, and neither courts nor Legislatures have a right to add to or take away from that meaning."

See 49 C.J.S. *Judgments* § 436 (1947). We are of the opinion that the language of this order is unequivocal and does not admit to the "interpretation" or permit the construction asserted by Clayton.

The trial court's finding with regard to a negotiated settlement is irrelevant. Repealed IC 31-1-12-16 (Burns Code Ed.,)

1. Clayton's motion for relief alleges a mistake in drafting and requests a reformation of the decree. It thus appears to be an untimely T.R. 60(B)(1). Clayton asserts on appeal the motion was filed under T.R. 60(B)(8), but cites *Lake-*nau, supra, a T.R. 60(B)(1) case, for supporting authority. We note a motion for relief falling within the scope of T.R. 60(B)(1) may not be filed under T.R. 60(B)(8) to obtain the "reasonable time" advantage.

favored separation agreements. However, the statute required that such agreements be introduced into evidence and expressly approved by the trial court. The decree of dissolution neither approves nor mentions such an agreement.

We are persuaded by June's arguments that *Ross, supra,* and *Haycraft, supra,* are controlling. The judgment is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ROBERTSON and RATLIFF, JJ., concur.